## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, JUDGE

| | |
|---|---|
| SOC TRANG SEAFOOD JOINT STOCK COMPANY ) (STAPIMEX) ) | |
| Plaintiff, ) | |
| ) | |
| .v. ) | |
| ) | |
| UNITED STATES, ) | Court No. 25-00030 |
| Defendant, ) | |
| ) | |
| And ) | |
| ) | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE ) | |
| ) | |
| And ) | |
| ) | |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION) | |
| ) | |
| Defendant-Intervenors. ) | |
| ) | |


MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SOC TRANG SEAFOOD JOINT STOCK COMPANY 'S (STAPIMEX).56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD


John J. Kenkel
International Trade Law Counselors, PLLC
8647 Richmond Hwy., Suite 623
Email: IntlTradeLawCounselors@outlook.com
Counsel for Plaintiff *Soc Trang Seafood Joint Stock Company (STAPIMEX)*

Dated: May 16, 2025

# TABLE OF CONTENTS

I.      Introduction ....................................................................................................1

II.     Statement to Rule 56.2 (c)...........................................................................1

        A.  The Administrative Determination under Review .............................1

        B.  Issues of Law Presented ....................................................................2

        C.  Summary of Arguments ......................................................................2

III.    Statement of Facts Relevant to the Issues ...................................................3

IV.     Standard of Review ......................................................................................3

V.      Argument.......................................................................................................7

VI.

        A.  SUBSTANTIAL EVIDENCE ON THE RECORD DEMONSTRATES THAT
            STAPIMEX DID NOT RENT "INDUSTRIAL AND LOGISTICS
            PROPERTY." …………………………………………………………7.

            1.      Facts…………………………………………………….......…  7

            2.      Commerce misconstrues the PHIVIDEC Data and STAPIMEX's
                    argument.  STAPIMEX does not rent "logistics
                    property."…………………………………………………………..11

        3.      Rental prices for raw land in the Philippines constitute substantial evidence
                on the record………………………………………………………15

    VI.  Conclusion....................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556 (Fed. Cir. 1984)* .................................4, 5, 14

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984)*……….…….3, 13

*Consolidated Edison Corp. v. Labor Board, 305 U.S. 197, 229 (1938)* ....................................4, 14

*Diversified Products Corp. v. United States, 6 CIT 155, 161 (1983)* ...................................….5, 14

*Dorbest Ltd v. United States, 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006)*……….…….5, 14

*Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996)*……….………….…….4, 13

*Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997)*....................................5

*Goodluck India Ltd. v. United States, 11 F.4th 1335, 1342-44 (Fed. Cir. 2021)*…………………..…….6

*Halo Electronics, Inc. v. Pulse Electronics, Inc., 579 U.S. 93, 103, 136 S. Ct. 1923, 195 L. Ed. 2d 278 (2016)*……………………………………………………………………………………………………….6

*Jinan Yipin Corp. v. United States, 637 F. Supp. 2d 1183, 1192 (Ct. Int'l Trade 2009)*……….……5

*Judulang v. Holder, 565 U.S. 42, 53, 132 S. Ct. 476, 181 L. Ed. 2d 449 (2011)*)…………….…….6

*Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1327 (Fed. Cir. 2009)*……….………….6, 15

*National Cable & Telecommunications Ass'n v. BrandXInternet Services, 545 U.S. 967, 982-983 (2005)*.......................................................................................................................................3

*Novosteel SA v. United States, 284 F.3d 1261, 1276 (Fed. Cir. 2002*………….………….……..7, 15

*PesqueraMares Australes Ltda. v. United States, 266 F.3d 1372, 1379 (Fed. Cir.2001)* ...............3

*Shakeproof Assembly Components Div. of Ill. Tool Works v. United States, 268 F.3d 1376, 1382 (Fed. Cir. 2001*……….………….………….………….………….………….………….6, 14

*Skidmore v. Swift & Co., 323 U.S. 134 (144)*…………………………………………………………..3, 4, 13

*SolarWorld Americas, Inc. v. United States, 962 F.3d. 1351 (Fed. Cir. 2020)*……….…………. .6

*Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998*……….………….……………….3

*Tung Mung Dev. Co. v. United States, 354 F.3d 1371, 1378 (Fed. Cir. 2004)* ......................….6, 14

*United States v. Mead Corp., 533 U.S. 218, 228 001)*………………………………………………*3*

*Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)* ............................................. 4, 14

*USX Corp. v. United States, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987)*........................ 5, 14

*Weyerhaeuser Co. v. United States Fish & Wildlife Service, 586 U.S. 9, 25, 139 S. Ct. 361, 202 L. Ed. 2d 269 (2018)*………………………………………………………………………………*6, 14*

*Wheatland Tube Co. v. U.S., 495 F.3d 1355, 1361 (Fed. Cir. 2007)* ........................................ 4

**STATUTES**

*5 U.S.C. § 706(2)(A)*……………………………………………………………………………………*6*

19 U.S.C. §1516a(a)(2)(B)(iii)……………………………………………………………………………1

19 U.S.C. §1516a(b)……………………………………………………………………………………… 3

19 U.S.C. §1671-1671(f)………………………………………………………………………………… 3

19 U.S.C. §1516a(b)(1)(B)………………………………………………………………………………4

19 U.S.C. § 1516a(b)(1)(B)(i)……………………………………………………………………………6.

**ADMINISTRATIVE DECISIONS**

*Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg., 85,500 (October 28, 2024), P.R.514,  and accompanying Decision Memorandum ("DM") (October 21, 2025)………………………1

*Frozen Warmwater Shrimp From Indonesia: Antidumping Duty Order; Frozen Warmwater Shrimp From Ecuador, India, and the Socialist Republic of Vietnam: Countervailing Duty Orders*………………………………………………………………………………………………… 1

*Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Preliminary Affirmative Countervailing Duty Determination*, 89 Fed. Reg., 22,374 (April 1, 2024), P.R. 418 ("*Preliminary* Determination*s*");  and accompanying Decision Memorandum……………………………………………………………………………………….2

## I.    <u>INTRODUCTION</u>

The U.S. Department of Commerce failed to use substantial evidence on the record to calculate a benchmark value for the rental of raw land by Plaintiff, Soc Trang Seafood Joint Stock Company ("STAPIMEX") in its countervailing duty investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam.   The Department's use of a benchmark value for "Rental Industrial <u>and</u> Logistics Property" (emphasis added) in Thailand rather than a value solely for raw land in the Philippines was not reasonable, an abuse of discretion, arbitrary and capricious, not supported by substantial evidence on the record, and was otherwise not in accordance with law.

## II.    <u>STATEMENT PURSUANT TO RULE 56.2(c)</u>

### A.  The Administrative Determination under Review

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest the Commerce Department's ("Commerce," or "the Department," or "DOC") Final affirmative countervailing duty determination regarding its investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam), issued October 21, 2024, and published it October 28, 2024.   *See Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg., 85,500 (October 28, 2024), P.R.514,   and accompanying Decision Memorandum ("DM") (October 21, 2025) ("*Final Determinations*") P.R. 513 (unpublished).  *Also see "Frozen Warmwater Shrimp From Indonesia: Antidumping Duty Order; Frozen Warmwater Shrimp From Ecuador, India, and the Socialist Republic of Vietnam: Countervailing Duty Orders,*89 Fed. Reg. 104,982 (December 26, 2024), P.R. 518.   P.R. refers to the Department's public record; "C.R." refers to the confidential record).   Commerce determined a rate of 2.84 percent.

This decision was based entirely on the Department's *Preliminary Determination* and its

preliminary decision memorandum. *See Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Preliminary Affirmative Countervailing Duty Determination*, 89 Fed. Reg., 22,374 (April 1, 2024), P.R. 418 ("*Preliminary* Determination*s*");    and accompanying Decision Memorandum ("PDM"), P. R. 412

### B.  Issue of Law Presented

There is one issue presented: whether the Department's use of a benchmark value in Thailand for "Rental Industrial and Logistics Property" as a benchmark for the rental of solely raw land in Vietnam by STAPIMEX was predicated on substantial evidence on the record and otherwise in accordance with law.  STAPIMEX argues that the Department's use of this Thai benchmark was not reasonable, was an abuse of discretion, was arbitrary and capricious, not based on substantial evidence on the record, and otherwise not in accordance with law.

### C.  Summary of Arguments

STAPIMEX rented only raw land for its factories in the period of investigation ("POI"). STAPIMEX did not rent "industrial and logistics property."  On the record of this investigation were two sources of benchmarks for land.  The first was published information from Thailand for "Industrial <u>and </u>Logistics Property." (emphasis added). *See* Pet. Ltr, (Feb. 26, 2025), P.R. 347 – 354,

The second source was information from The Philippines detailing rental prices <u>solely</u> for raw land. *See* Pet. ltr. (February 26, 2024; Exhibit 5).  P.R. 353.  Since STAPIMEX rented solely raw land and not logistics property, the Department's choice of using a benchmark comprised of industrial land <u>and</u> logistical property did not constitute substantial evidence on the record. Moreover, it was an abuse of discretion and arbitrary and capricious for Commerce to use the Thai data.  Accordingly, Commerce's decision was not predicated on substantial evidence on the record and was not otherwise in accordance with law.

2

III.    **STATEMENT OF FACTS RELEVANT TO THE ISSUES**

The statement of facts relevant to this issue is presented as an introduction to the substantive arguments discussed below.

IV.    **STANDARD OF REVIEW.**

The Court will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record, or are not otherwise in accordance with law.  19 U.S.C. §1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. § 1671-1671(f) is "in accordance with law," the courts review the statute to determine whether "Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984). "To ascertain whether Congress had an intention on the precise question at issue, {the Court} employ{s} the 'traditional tools of statutory construction.'" *Timex V.I., Inc. v. United States,* 157 F.3d 879, 882 (Fed. Cir. 1998) (citing *Chevron,* 467 U.S. at 843 n.9). In addition, the tools of statutory construction "include the statute's structure, canons of statutory construction, and legislative history." *Id.* Where a court has previously interpreted a statute and the court holds that its construction of the statute flows from the unambiguous terms of the statute and leaves no room for agency discretion, the court's interpretation is binding on the agency. *National Cable & Telecommunications Ass'n v. BrandXInternet Services,* 545 U.S. 967, 982-983 (2005).

If the court determines that the statute is silent or ambiguous with respect to the specific issue, the question then becomes what level of deference is owed Commerce's interpretation, the traditional second prong of the *Chevron* analysis, *Chevron,* 467 U.S. at 842-43, or the less deferential regime set forth in *Skidmore v. Swift & Co.,* 323 U.S. 134 (144). *See United States v. Mead Corp.,* 533 U.S. 218, 228 (2001). The Federal Circuit has held that *Chevron* deference is owed Commerce's statutory interpretations as to appropriate methodology. *PesqueraMares*

*Australes Ltda. v. United States,* 266 F.3d 1372, 1379 (Fed. Cir .2001). That analysis entails determining whether Commerce's construction of an ambiguous statute is "permissible." *See Chevron,* 467 U.S. at 843. A "permissible" construction under *Chevron* is understood in terms of reasonableness; only reasonable interpretations will be upheld by the Court. *See Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1038 (Fed. Cir. 1996) *('Chevron* requires us to defer to the agency's interpretation of its own statute as long as the interpretation is reasonable."). Not unlike the first prong of *Chevron,* to determine reasonableness, courts look to the express terms of the statute, the objectives of the statute, and the objectives of the statutory scheme as a whole. *Wheatland Tube Co. v. U.S.,* 495 F.3d 1355, 1361 (Fed. Cir. 2007).

Under the standard of review established in *Skidmore,* "{t}he weight {accorded to an administrative} judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.,* 323 U.S. 134, at 140.

The Court will uphold a final determination by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. §1516a(b)(1)(B). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938). Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted). Thus, this Court has stated that "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed

4

in the light that the record in its entirety furnishes, including the body of evidence opposed to [  ] view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, the Commerce determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Commerce also must make its decisions based on a fair and balanced comparison of the data. To do otherwise is arbitrary and capricious. *See Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) at 1562 ("substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence.") *See also, Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183, 1192 (Ct. Int'l Trade 2009) (holding that Commerce failed "to make adequate findings, based on substantial evidence, to support its determination to disregard summarily the import and export data from the *Market Research Report*. Nor did Commerce undertake a <u>qualitative</u> comparison of the NHRDF data with the import data or the export data in the *Market Research Report* to produce a finding or findings that the court could affirm." *Id.* (emphasis added).

Commerce is required to objectively evaluate all data on the record. Thus, it must hold its preferences to the same test as it uses to evaluate respondent's proffered data. This analysis must consider the strengths and weaknesses of all the data and then choose the best available information. *See, e.g., Dorbest Ltd v. United States*, 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006) (holding that Commerce must justify its decisions).

5

In addition, Congress intended that Commerce calculate dumping margins as accurately as possible and use the best available information. *See Shakeproof Assembly Components Div. of Ill. Tool Works v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001).

Regarding the abuse-of-discretion standard, the courts have applied the review standard of the *Administrative Procedure Act (APA), 5 U.S.C. § 706*, to Commerce decisions covered by *19 U.S.C. § 1516a(b)(1)(B)(i). See, e.g., SolarWorld Americas, Inc. v. United States, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020)*. The APA provides for setting aside an agency decision if, for example, it is "an abuse of discretion," *5 U.S.C. § 706(2)(A)*, and the courts have reviewed decisions for an abuse of discretion, *see Goodluck India Ltd. v. United States, 11 F.4th 1335, 1342-44 (Fed. Cir. 2021)* (citing cases). When discretion is granted by Congress, it "should be exercised in light of the considerations underlying the grant of that discretion." *Halo Electronics, Inc. v. Pulse Electronics, Inc., 579 U.S. 93, 103, 136 S. Ct. 1923, 195 L. Ed. 2d 278 (2016)* (internal quotation marks and citation omitted). Discretion is abused if, for example, its exercise rests on "'a clear error of judgment'" in the "'consideration of the relevant factors.'" *Weyerhaeuser Co. v. United States Fish & Wildlife Service, 586 U.S. 9, 25, 139 S. Ct. 361, 202 L. Ed. 2d 269 (2018)* (quoting *Judulang v. Holder, 565 U.S. 42, 53, 132 S. Ct. 476, 181 L. Ed. 2d 449 (2011)*).

Further, it is axiomatic that Commerce may not exert its authority in an arbitrary or capricious manner. *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004).

Moreover, when substantial evidence is not utilized, such action is tantamount to the use of speculation in making a determination. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F.3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

6

## V.    ARGUMENTS

### A. SUBSTANTIAL EVIDENCE ON THE RECORD DEMONSTRATES THAT STAPIMEX DID NOT RENT "INDUSTRIAL AND LOGISTICS PROPERTY."

#### 1.  Facts

STAPIMEX rents raw land in the most economically-distressed areas of Vietnam.  That is why the government of Vietnam grants subsidies to rent land in those locations.  In its Section III response (public version), STAPIMEX responded as follows:

## Standard Questions Appendix
## Rent - An Phu Factory

**An Phu Factory (An Nghiep Industrial Park, Chau Thanh District, Soc Trang Province)**

**A.** Specify the eligibility criteria your company had to meet in order to receive benefits under this program.  State whether eligibility was or is currently contingent on one or more of the following criteria:  1) whether or not your company exports or has increased its exports, 2) the use of domestic rather than imported inputs, 3) the industry to which your company belongs, or 4) the region in which your company is located.

**RESPONSE:**

**Projects in the field of investment encouragement are invested in areas with extremely difficult socio-economic conditions according to Article 14 of Decree No. 142/2005/ND-CP dated November 14, 2005.  Exhibit V.6. contains this decree. An Phu factory qualifies for the amount of rent charged because it is located in this depressed area.  Exports, use of domestic raw materials, or type of industry are not criteria.  The region (location) in which the land is situated is the criterion.**

STAPIMEX Response to Section III of Initial Questionnaire (January 25, 2024).  C.R.100, at 53; P.R. 272  at 53.

STAPIMEX rented the raw land for the purpose of building a factory on it.  In its Section III response, STAPIMEX responded as follows:

7

Location of land (be sure to specify whether the acquired land is located in a special economic and/or development zone)

**RESPONSE:**

**Lot N, An Nghiep Industrial Park, An Hiep commune, Chau Thanh district, Soc Trang Province. This area is designated by the government as a special economic zone.**

a.  Area of land (be sure to specify the unit of measure);

**RESPONSE:**

**[        ] square meters**

b.  Price paid for land-use rights (specify whether payment was in a lump sum or in installments);

**RESPONSE:**
**Originally, Stapimex paid [        USD] per square meter per year, in a lump sum payable on an annual basis.  There was a partial exemption of rent from January 2008 through the end of the POI.  See response to Questions "B," and "G" in the Standard Questions Appendix.**

c.  Terms of payment;

**RESPONSE:**
**The rent is payable once a year.**

d.  Duration of lease;

**RESPONSE: [  ] years.**

e.  Translated copy of the land-use contract;

**RESPONSE:**
**See <u>Exhibit</u> V.2.**

f.  Provide the land-use certificates and land-use agreements issued to you by your local land-use bureau.

**RESPONSE:**
**See <u>Exhibits</u> V.2 and V.3.**

1.  How did your company obtain the land-use rights identified in response to question 3? Include in your response a discussion of whether your company owns its land-use rights or rents its land.

**RESPONSE:**

**The Province established an Industrial Park calling for investment. Stapimex submitted a proposed contract to rent land to build a**

8

**factory.  Stapimex rents this land.**

Stapimex Section III Response (January 26, 2024).  P.R. 272, p. 51.

As demonstrated above, upon that raw land, STAPIMEX built factories and warehouses, which it owns.  It did not pay any rental fee for its factories and warehouses in the period of investigation ("POI"). *Id*.

The data from Thailand and the Philippines was placed on the record by the petitioner.

> The petitioner placed on the record the following sources of information for use as benchmarks in this investigation: (1) the Thailand Board of Investment's "Cost of Doing Business in Thailand 2023," which includes industrial and land rental prices in 2022; (2) information from the Thailand Board of Investment's website, which includes rental rates from different industrial zones; (3) Thailand Board of Investment's "Cost of Doing Business in Thailand" from November 2021, which also includes industrial land rent prices; (4) "Thailand Manufacturing Property, Market Overview 2022," produced by Knight Frank which provides prices for serviced industrial land plots; and (5) a webpage entitled "Cost of Doing Business" from the Philippines' PHIVIDEC Industrial Authority (PHIVIDEC).

Commerce Prelim. DM at 19-20, (fn. omitted). P.R. 412.  *Also See* Petitioner's Letter, "Benchmark Submission," dated February 26, 2024 (Petitioner's Benchmark Submission), at 2 and Exhibits 1, 2, 3, 4, and 5, respectively.  P.R. 347-354.  Petitioners' Exhibit 5 contains the PHIVIDEC information.

Commerce rejected the only raw land rental prices on the record: rental prices in the Philippines.

> Regarding the "Cost of Doing Business" webpage from PHIVIDEC, we find the data to be unreliable because: (1) the land rental rate data is not dated; and (2) the "Cost of Doing Business" webpage from PHIVIDEC is unclear as to what the basis for the rental rates are.

Prelim. DM at 20 (fn. omitted; citing petitioner's Benchmark Submission at Exhibit 5).  P.R. 412

Rather, Commerce chose a price for "Rental Industrial and Logistics Property" in Thailand.  Pet.

9

Benchmark ltr. (February 26, 2024).  P.R. 347 – 354.

> In evaluating the potential benchmarks, we find that the prices for
> "Rental Industrial and Logistics Property" in the Thai Board of
> Investment's "Cost of Doing Business in Thailand 2023" are the
> appropriate benchmarks for valuing land rents in this investigation.
> Specifically, these benchmarks reflect land rental prices by region over
> the POI, which is consistent with Commerce's methodology in Shrimp
> from Vietnam 2013.  Regarding the Thailand Board of Investment's
> "Cost of Doing Business in Thailand" data from November 2021, we
> find it less appropriate for use as a benchmark because the prices were
> not contemporaneous with the POI. Regarding the information from the
> Thailand Board of Investment's website, we do not find it appropriate to
> use this data because the reported rental rates are for individual industrial
> zones, which are more specific than data used in previous cases and not
> consistent with the methodology utilized in Shrimp from Vietnam 2013.

Prelim DM. at 20 (fn.105 – 108 omitted).  P.R. 412.  Commerce did not make any changes

in its Final Determination:

> **Commerce's Position:** We disagree with both STAPIMEX and the GOV
> that Commerce improperly selected the land benchmarks used in the
> Preliminary Determination for the Exemption or Reduction of Rents for
> Encouraged Industries program. Therefore, we continue to rely on the
> same land benchmarks in our calculations for the final determination.
> . . . .
>
> In the Preliminary Determination, Commerce found that the prices for
> "Rental Industrial and Logistics Property" in the Thai BOI's "Cost of
> Doing Business in Thailand 2023" are the best benchmarks for valuing
> land rents in this investigation.  Specifically, and unlike the other
> benchmark sources on the record, these benchmarks reflect land rental
> prices by region over the POI.
> . . . . .
>
>  Both STAPIMEX and the GOV argue that the benchmark Commerce
> selected in the Preliminary Determination is flawed for several reasons.
> First, STAPIMEX and the GOV argue that the Thai BOI data may not
> be for "raw land," but instead are prices for logistical warehouses
> situated on land.  However, this argument is unsupported by the
> evidence on the record. The benchmark data from "Cost of Doing
> Business in Thailand 2023" is for "rental industrial and logistics
> property." The benchmark data does not indicate that the land is only for
> logistical warehouses, as STAPIMEX suggests. STAPIMEX also argues

10

that, because the website URL which is cited to as the source for the underlying data in the benchmark information, which is on our record does not work, it is not verifiable. We contend that whether the information is currently available on the Thai BOI website does not render the benchmark unusable; Commerce requires information to be placed on the record rather than just provide a website link because websites are frequently updated and/or taken down. The benchmark information is in the Thai BOI table, which is on the record of this investigation.

. . . . .

Finally, STAPIMEX argues that Commerce should rely instead on the "industrial lower" PHIVIDEC land prices on the record. STAPIMEX claims that Commerce improperly rejected this benchmark in the Preliminary Determination because it was "not dated," and because the basis of the rental rates for the data is unclear. While STAPIMEX contests that a date does appear on this submission (i.e., February 26, 2024), we note that this is date of the benchmark submission itself; thus, it appears to be the date that the data was accessed, not the date when the PHIVIDEC data was released. Moreover, PHIVIDEC does not list the dates of the data used to compile its listed land lease rates.   The only date referenced in the PHIVIDEC exhibit is calendar year 2016 (for both the Power and Water Rates), which is less contemporaneous with the POI than the data available in "Cost of Doing Business in Thailand 2023." STAPIMEX also argues that the PHIVIDEC data is the only information on the record for rental prices of raw land.

However, there is nothing in the exhibit to indicate that the "industrial lower" PHIVIDEC lease rates are for raw land. As a result, we continue to find the PHIVIDEC data is not the best information available on the record to use as the land benchmark in this investigation. Consequently, we continued to use the land benchmark selected in the Preliminary Determination (i.e., the Thai BOI's "Cost of Doing Business in Thailand 2023") in our calculations for the final determination.

Final IDM (Issue 4; pp. 13-17; fn. omitted) (emphasis in original).  P.R. 513

**2. <u>Commerce misconstrues the PHIVIDEC Data and STAPIMEX's argument. STAPIMEX does not rent "logistics property."</u>**

Commerce found the PHIVIDEC data to be unreliable because: (1) the land rental rate data is not dated; and (2) the "Cost of Doing Business" webpage from PHIVIDEC is unclear as to what the basis for the rental rates are.

11

STAPIMEX argues that the PHIVIDEC data did have a date on it, February 26, 2024. Moreover, the PHIVIDEC is precise: it is for rental prices for raw land. {"Land Lease Rates," "General Industrial,"   "Industrial Lower," "raw lot," etc.)   *See* Pet. Letter (February 26, 2024; Exhibit 5).  P.R. 353.   Thus, Commerce is incorrect. The PHIVIDEC clearly and unequivocally is related solely to land, including in "depressed area{s}." *Id*.  There is no other description.   That is, there is no reference in the PHIVIDEC data to logistics property, *etc.*

 If this Court deems the PHIVIDEC data to be questionable in any manner, we request the Court to remand this case to Commerce to re-open the record to allow STAPIMEX to clarify the PHIVIDEC information.

The key point is this: it is better to have precise data, i.e., only for raw land, than imprecise, over-valued data for something STAPIMEX does not rent (logistical structures) merely because the Thai data is dated and is in a location in Thailand Commerce finds to be comparable to the location of STAPIMEX's land.

STAPIMEX argues that the Thai BOI data is clear on its face: "Rental industrial and logistics property."  A reasonable mind can conclude that this is both for industrial land <u>and</u> land with logistical structures on it.  Thus, the Thai data is artificially inflated vis-à-vis the situation of STAPIMEX.

A search on the internet found the following definition for "logistics" as it applies to rental property.

> Logistics real estate is the real estate sector that responds to companies' logistics needs. In other words, logistics real estate involves the rental and sale of warehouses, distribution centres, flexible spaces and other industrial buildings with storage facilities. Mar 27, 2025.

Source:  https://www.google.com/search?q=definition+logistics&client=firefox-b-1-d&sca_esv=63876fbbe76b4a6d&channel=entpr&sxsrf=AHTn8zo0MPEobXtvQPm-YgtRSCxHmYMBJQ%3A1747279532900&ei=rF4laPrONq_U5NoPkM-dwQw&ved=0ahUKEwj61Ia_w6SNAxUvKlkFHZBnJ8gQ4dUDCBA&uact=5&oq=defin

ition+logistics&gs_lp=Egxnd3Mtd2l6LXNlcnAiFGRlZmluaXRpcb24gbG9naXN0aWNzM
hAQABiABBiRAhiKBRhGGPkBMgUQABiABDIGEAAYFhgeMgYQABgWGB4yBhA
AGBYYHjIGEAAYFhgeMgYQABgWGB4yBhAAGBYYHjIGEAAYFhgeMgYQABg
WGB4yKhAAGIAEGJECGIoFGEYY-
QEYlwUYjAUY3QQYRhj5ARj0Axj1Axj2A9gBAUj7TlCMCVjrQnABeACQAQCYAV
6gAc4HqgECMTa4AQPIAQD4AQGYAhGgAtAIwgILEAAYgAQYsAMYogTCAgsQA
BiwAxiiBBiJBcICBxAjGCcYrgLCAggQABiABBiiBMICCBAAGKIEGIkFwgILEAAY
gAQYhgMYigXCAgsQABiABBiRAhiKBcICCBAAGBYYChgewgIqEAAYgAQYkQIY
igUYRhj5ARiXBRiMBRjdBBhGGPkBGPQDGPUDGPYD2AEBwgIGEAAYBxgemA
MAiAYBkAYDugYGCAEQARgTkgcCMTegB8l2sgcCMTa4B8cI&sclient=gws-wiz-
serp

Substantial evidence on the record demonstrates that STAPIMEX rented only raw land in the POI and built its factories and warehouses on that land. Given that the Thai data includes logistical property (property with structures on it), it stands to reason that the rental price will be higher than that for only raw land. *See Chevron, Skidmore*, and *Fujitsu Gen. Ltd.* ('*Chevron* requires us to defer to the agency's interpretation of its own statute as long as the interpretation is reasonable."). Including "logistics property" in the valuation of rental land leads to a higher rental price because of the buildings on the land. This is not a reasonable comparison to STAPIMEX's rental of only raw land. Only selection of a rental property identical to what STAPIMEX incurs is reasonable.

The preliminary and final DMs do not justify Commerce's selection of the Thai data based on what is being rented, i.e., raw land. Commerce ignores that basic requirement and proceeds to justify its selection of rental value predicated only on the location of the property in Thailand, i.e., that it is similar to the location of the raw land rented by STAPIMEX in Vietnam, *e.g.*, based on population density, *etc*.

Indeed, if the Thai data were only for raw land, the title of that document would not have included the phrase "<u>and</u> logistics property." (emphasis added). Thus, the use of the Thai data does not constitute substantial evidence. *See Universal Camera, Consolidated Edison Corp*, and *Atlantic Sugar*. The evidence used by Commerce, the Thai data, is not substantial "when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [   ] view.'" *Diversified Products Corp.* at 161, *quoting Universal Camera.*

13

Commerce's use of a value including land with logistical structures on it constitutes "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp.* Moreover, Commerce mere assertion that the Thai data was better, i.e., resulted in a more accurate calculation of a CVD margin, is unavailing. *See Gerald Metals*, *Shakeproof Assembly Components.*

Thus, Commerce's selection of the Thai data was neither fair nor balanced. Therefore, it was arbitrary and capricious. *See Atlantic Sugar, Tung Mung Dev. Co..* Moreover, it is clear that Commerce must hold its preferences to the same tests it uses to evaluates respondent's proffered data. *See Dorbest.* It is clear that by including rental values for logistical structures on land, Commerce created an apples-to-oranges comparison.

Commerce clearly abused its discretion in making an apples-to-oranges comparison of Thai data to STAPIMEX's circumstances. Discretion is abused if, for example, its exercise rests on "'a clear error of judgment'" in the "'consideration of the relevant factors.'" *Weyerhaeuser Co. v. United States Fish & Wildlife Service.*

Likewise, the PHIVIDEC information is also clear on its face: it is for raw land. Commerce argues that there is no evidence that the PHIVIDEC information is for raw land. It is self-evident that the rental values are for raw land. As quoted elsewhere herein, the PHIVIDEC data is comprised of rental prices solely for land.

Thus, it is reasonable to conclude that these rental prices in Thailand are not merely for raw land but include industrial buildings of various types. Thus, these prices encompass the rental price for both the structures built on the land as well as the land itself.

The record is clear, STAPIMEX (1) rented raw land and (2) built structures, such as its factories and warehouses. STAPIMEX rents only raw land located in the most economically-depressed areas of Vietnam. It is precisely because these areas of Vietnam are so depressed that the government of Vietnam gives subsidies for renting in those locations. For that reason, Commerce should have not only used the PHIVIDEC data, but selected the cheapest value among

14

the choices presented.   It stands to reason that the cheapest land rental prices in the Philippines are associated with the most distressed areas, just as they are in Vietnam.

**3.  Rental prices for raw land in the Philippines constitute substantial evidence on the record.**

The only information on the record for rental prices of raw land is that for the Philippines. Commerce rejected this data for three reasons.  First, the Department stated that this data was not dated and therefore, there was no way to determine when it was valid.     Contrary to the Department's statement in its Decision Memorandum, the Philippines data does have a date (February 26, 2024), It appears that  this data was published by the PHIVIDEC Industrial Authority on that date.  PHIVIDEC is in the business of renting raw land.  Thus, it is reasonable to conclude that the prices offered by PHIVIDEC on its website were valid on February 26, 2024.

Commerce believes, however, that the date on the PHIVIDEC website merely constitutes the date that the petitioner downloaded that data.   STAPIMEX argues that this amounts to speculation.  As the Federal Circuit has held, speculation can never be a substitute for substantial evidence on the record.  *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F.3d 1261, 1276 (Fed. Cir. 2002).

The second reason the Department rejected this data in the preliminary determination is that this data, "is unclear as to what the basis for the rental rates are."  This is incorrect.  The data is clear on its face.  It is only for land, with separate rental rates for various levels of commercial and industrial raw land, showing lease rates per square meter per year, as of February 26, 2024. Thus, the PHIVIDEC information is more accurate than the Thai data because it is specific to raw land. Commerce should have used this data.   The Department is mandated to calculate its margins as accurately as possible.   The appropriate data to use in the PHIVIDEC data is for "industrial

15

lower" to more accurately match the land in Vietnam which STAPIMEX rents, in the most economically-depressed areas in the country.

Finally, given that Commerce believes the PHIVIDEC data does not indicate a timeframe, with which STAPIMEX disagrees, it assumes (speculates) that it is for 2016, since other PHIVIDEC data is for 2016. *See Lucent Techs*. While STAPIMEX believes this data, on its face, is for 2024, there is an easy way to settle the matter. There are two possible solutions to this alleged problem. First, if the Court agrees with Commerce, the Department can do what it always does with data prior to a POI/POR – inflate it. Second, this Court can remand the case to Commerce with instructions to re-open the record for submission of information showing the effective date of the PHIVIDEC information or submission of new PHIVIDEC data as close to the POI as possible.

Any data, no matter when it was valid, is better than the wrong data – data for logistical land STAPIMEX did not rent.

Thus, the rental prices for "rental industrial and logistical property" do not constitute substantial evidence on the record. Only rental prices for raw land in the Philippines constitute substantial evidence on the record because they mirror what STAPIMEX rents: cheap raw land in an economically-depressed area.

**VI.    CONCLUSION**

For the reasons stated above, the Court should rule in accordance with the arguments contained herein. Thus, STAPIMEX respectfully requests this Court to remand this case to Commerce with the appropriate instructions.

Respectfully submitted,

*/s/ John J. Kenkel*
John J. Kenkel

16

International Trade Law Counselors, PLLC
8647 Richmond, Hwy, Suite 623
Telephone: (703) 390-4064
Email: IntlTradeLawCounselors@outlook.com
*Counsel for Soc Trang Seafood Joint Stock Company
 (STAPIMEX).*

Dated: May 16, 2025

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE LEO M. GORDON, JUDGE
_____

| | |
|---|---|
| SOC TRANG SEAFOOD JOINT STOCK COMPANY ) | |
| (STAPIMEX) ) | |
| Plaintiff, ) | |
| ) | |
| .v. ) | |
| ) | |
| UNITED STATES, ) | Court No. 25-00030 |
| Defendant, ) | |
| ) | |
| And ) | |
| ) | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE ) | |
| ) | |
| And ) | |
| ) | |
| AMERICAN SHRIMP PROCESSORS ASSOCIATION) | |
| ) | |
| Defendant-Intervenors. ) | |

_____

**Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 5,062 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Respectfully submitted,

*/s/ John J. Kenkel*
John J. Kenkel
International Trade Law Counselors, PLLC
8647 Richmond, Hwy, Suite 623
Telephone: (703) 390-4064
Email: IntlTradeLawCounselors@outlook.com
*Counsel for Soc Trang Seafood Joint Stock
Company  (STAPIMEX).*

Dated: May 16, 2025