**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  LEO M. GORDON, SENIOR JUDGE**

| | |
|---|---|
| SOC TRANG SEAFOOD JOINT STOCK CO., )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>Defendant, )<br>)<br>and )<br>)<br>AD HOC SHRIMP TRADE ACTION )<br>COMMITTEE and AMERICAN SHRIMP )<br>PROCESSORS ASSOCIATION, )<br>)<br>Defendant-Intervenors. ) | Court No. 25-00030 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MᴄCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL                              EMMA E. BOND
SPENCER NEFF                            Senior Trial Counsel
Attorney                                Commercial Litigation Branch
Office of the Chief Counsel             U.S. Department of Justice
    for Trade Enforcement & Compliance  P.O. Box 480
U.S. Department of Commerce             Washington, DC 20044
                                        (202) 305-2034
                                        Email: emma.e.bond@usdoj.gov

July 16, 2025                           *Attorneys for Defendant*

## TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 ................................................................2

    I.    Administrative Determination Under Review ..........................................2

ARGUMENT ........................................................................................................2

    I.    Standard Of Review ............................................................................2

    II.    Commerce's Use Of Data From The Cost Of Doing Business Report As A
        Benchmark For Land Is Lawful And Supported By Substantial Evidence .............3

        A.  Standards Governing Commerce's Tier-Three Analysis Pursuant To 19 C.F.R.
            § 351.511(a)(2)(iii) ..................................................................3

        B.  Statement Of Facts Relating To Commerce's Selection Of The Land
            Benchmark ............................................................................5

            1.  Commerce Selects Data From The Doing Business Report In The
                Preliminary Determination ............................................................5

            2.  Interested Parties File Case Briefs Regarding The Benchmark For Land ....8

            3.  Commerce Issues The Final Determination ................................10

        C.  Commerce Reasonably Selected The Land Rental Data From The Cost Of
            Doing Business Report As The Best Available Information To Use As A
            Benchmark For Land ................................................................11

            1.  Substantial Evidence Supports Commerce's Finding That The
                 PHIVIDEC Report Is Undated ........................................................12

            2.  Stapimex Failed To Submit Evidence Regarding The Data Used In The
                 PHIVIDEC Report And The Doing Business Report ................................14

            3.  Overall, Substantial Evidence Supports Commerce's Determination That
                 The Data From The Doing Business Report Are The "Best" Benchmark
                 For Land ..............................................................................17

CONCLUSION ....................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Archer Daniels Midland Co. v. United States,*
   968 F. Supp. 3d 1269 (2014) ........................................................................... 4, 18

*Beijing Tianhai Indus. Co. v. United States*,
   52 F. Supp. 3d 1351 (Ct. Int'l Trade 2015) ......................................................... 4, 18

*Boomerang Tube LLC v. United States*,
   856 F.3d 908 (Fed. Cir. 2017) ............................................................................. 16

*Canadian Solar Inc. v. United States*,
   537 F. Supp. 3d 1380 (2021) ............................................................................... 4

*Cleo Inc. v. United States*,
   501 F.3d 1291 (Fed. Cir. 2007) ........................................................................... 3

*Consol. Edison Co. of N.Y. v. NLRB*,
   305 U.S. 197 (1938) ......................................................................... 2, 13, 15

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) .................................................................................. 2, 16

*Corus Staal BV v. United States*,
   502 F.3d 1370 (Fed. Cir. 2007) ........................................................................... 16

*Essar Steel Ltd. v. United States*,
   678 F.3d 1268 (Fed. Cir. 2012) ..................................................................... 12, 16

*Habas Sinai v. Tibbi Gazlar Istihsal Endustrisi A.S.*,
   536 F. Supp. 3d 1333 (Ct. Int'l Trade 2021) ....................................................... 4

*Heze Huayi Chem. Co. v. United States*,
   532 F. Supp. 3d 1301 (2021) ............................................................................... 4

*Mosaic Co. v. United States*,
   589 F. Supp. 3d 1298 (Ct. Int'l Trade 2022) ....................................................... 4, 18

*NEXTEEL Co. v. United States*,
   461 F. Supp. 3d 1336 (Ct. Int'l Trade 2020) ....................................................... 16

*Ningbo Dafa Chem. Fiber Co. v. United States*,
   580 F.3d 1247 (Fed. Cir. 2009) ........................................................................... 3

iii

*Nippon Steel Corp. v. United States*,
　301 F. Supp. 2d 1355 (2003) ...................................................... 4

*Nippon Steel Corp. v. United States*,
　337 F.3d 1373 (Fed. Cir. 2003) ........................................... 13, 15

*Nippon Steel Corp. v. United States*,
　458 F.3d 1345 (Fed. Cir. 2006) ................................................. 3

*QVD Food Co. v. United States*,
　658 F.3d 1318 (Fed. Cir. 2011) ............................................... 12

*Risen Energy Co., Ltd. v. United States*,
　570 F. Supp. 3d 1369 (Ct. Int'l Trade 2022) ............................. 17

*Timken Co. v. United States*,
　788 F. Supp. 1216 (1992) .................................................... 4, 19

*U.S. Steel Corp. v. United States*,
　953 F. Supp. 2d 1332 (Ct. Int'l Trade 2013) ........................ 13, 15

*United States v. Eurodif S.A.*,
　555 U.S. 305 (2009) ................................................................ 2

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
　435 U.S. 519 (1978) .............................................................. 13

**Statutes**

19 U.S.C. § 1516a(b) ................................................................. 2

19 U.S.C. § 1677(5) ............................................................. 4, 18

28 U.S.C. § 2637 ...................................................................... 16

**Regulations**

19 C.F.R. § 351.301(c) ............................................................ 13

19 C.F.R. § 351.511 .................................................................. 3

19 C.F.R. § 351.511(a) ...................................................... 3, 4, 18

**Administrative Determinations**

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination*,
78 Fed. Reg. 50,387 (Dep't of Commerce, Aug. 19, 2013) ....................................... 7

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Preliminary Countervailing Duty Determination*
78 Fed. Reg. 33,342 (Dep't of Commerce, June 4, 2013)........................................... 7

*Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*,
89 Fed. Reg. 85,500 (Dep't of Commerce, Oct. 28, 2024). .................................. 2, 10

*Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*,
89 Fed. Reg. 22,374 (Dep't of Commerce, Apr. 1, 2024).......................................... 5

*Polyethylene Retail Carrier Bags from the Socialist Republic of Vietnam*,
75 Fed. Reg. 16,428 (Dep't of Commerce, Apr. 1, 2020).......................................... 6

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  LEO M. GORDON, SENIOR JUDGE**

| | |
|---|---|
| SOC TRANG SEAFOOD JOINT STOCK CO., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Court No. 25-00030 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| AD HOC SHRIMP TRADE ACTION | ) |
| COMMITTEE and AMERICAN SHRIMP | ) |
| PROCESSORS ASSOCIATION, | ) |
| | ) |
| Defendant-Intervenors. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response in opposition to the

motion for judgment on the agency record filed by plaintiff Soc Trang Seafood Joint Stock Co.

(Stapimex).  Pl. Br., ECF No. 34.  Stapimex challenges the Department of Commerce's final

determination in the countervailing duty investigation of frozen warmwater shrimp (shrimp)

from Vietnam, in which Commerce relied on an external land benchmark to determine the

benefit for Vietnam's "Exemption or Reduction of Rents for Encouraged Industries" program.

Specifically, Commerce determined that land rental data from the Thailand Board of

Investment's Cost of Doing Business in Thailand 2023 Report (Cost of Doing Business Report)

provided the best benchmark on the record.  Because this determination is lawful and supported

by substantial evidence, we respectfully request that the Court sustain the final determination and enter judgment for the United States.

<u>**STATEMENT PURSUANT TO RULE 56.2**</u>

**I.**     <u>**Administrative Determination Under Review**</u>

The administrative determination under review is the final determination in the countervailing duty investigation of shrimp from Vietnam. *See Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 89 Fed. Reg. 85,500 (Dep't of Commerce, Oct. 28, 2024) (*Final Determination*), and accompanying Issues and Decision Memorandum for the Final Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam (Dep't of Commerce, Oct. 24, 2024), available at barcode 4653658-02 (last visited on July 15, 2025) ("*Decision Memorandum*").  The period of investigation was January 1, 2022, through December 31, 2022.

**II.**     <u>**Issue Presented For Review**</u>

Whether Commerce's selection of data contained in the Cost of Doing Business Report as a benchmark for land is supported by substantial evidence and in accordance with law.

<u>**ARGUMENT**</u>

**I.**     <u>**Standard Of Review**</u>

The Court upholds Commerce determinations that are supported "by substantial evidence on the record" and otherwise "in accordance with law{.}"  19 U.S.C. § 1516a(b)(1)(B)(i). Commerce's factual findings "are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 & n.6 (2009) (citation omitted).  "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938) (citations

omitted); *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1253 (Fed. Cir. 2009).

Even if the Court may draw two inconsistent conclusions from the evidence contained in the record, doing so "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted).

A party disputing Commerce's determination as unsupported by substantial evidence thus "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted). An agency decision may not be overturned "simply because the reviewing court would have reached a different conclusion based on the same record." *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted).

## II. Commerce's Use Of Data From The Cost Of Doing Business Report As A Benchmark For Land Is Lawful And Supported By Substantial Evidence

Commerce's determination to use land rental data from the Cost of Doing Business Report is lawful and supported by substantial evidence. As discussed below, a reasonable mind could conclude that the data from the Cost of Doing Business Report provides the best evidence on the record to value the land benchmark. Accordingly, Commerce's determination is supported by substantial evidence, and we respectfully request that the Court sustain the final determination.

### A. Standards Governing Commerce's Tier-Three Analysis Pursuant To 19 C.F.R. § 351.511(a)(2)(iii)

"In determining whether a benefit has been conferred upon the recipient of a financial contribution under 19 U.S.C. § 1677(5), Commerce considers (among other factors) whether a good or service has been provided to the recipient for less-than-adequate remuneration

('LTAR')." *Habas Sinai v. Tibbi Gazlar Istihsal Endustrisi A.S.*, 536 F. Supp. 3d 1333, 1336–37 (Ct. Int'l Trade 2021) (citing 19 U.S.C. § 1677(5)(E)(iv)). In assessing whether goods or services are being provided for LTAR, Commerce follows the analysis in 19 C.F.R. § 351.511. *Id.* at 1377. Pursuant to section 351.5511, when Commerce is unable to conduct a tier-one or tier-two analysis because the actual market determined price and world market price are unavailable, "Commerce moves on to a tier-three analysis and 'measures{s} the adequacy of remuneration by assessing whether the government price is consistent with market principles.'" *Mosaic Co. v. United States*, 589 F. Supp. 3d 1298, 1314 (Ct. Int'l Trade 2022), *appeal filed* Fed. Cir. No. 24-1593 (citing 19 C.F.R. § 351.511(a)(2)(iii)).

"If Commerce determines that the government price is not consistent with market principles it will look to construct an external benchmark." *Id.* (citing *Canadian Solar Inc. v. United States*, 537 F. Supp. 3d 1380, 1389 n.6 (2021)). When, as in this case, multiple factors affect the usability of benchmark data, "{i}t is within Commerce's discretion to weigh the relevant factors." *Canadian Solar*, 537 F. Supp. 3d at 1391 (citing *Nippon Steel Corp. v. United States*, 301 F. Supp. 2d 1355, 1360 (Ct. Int'l Trade 2003)).

Although the benchmark must be comparable, nothing requires Commerce to "use prices for merchandise that are *identical* to a respondent's purchases." *Beijing Tianhai Indus. Co. v. United States*, 52 F. Supp. 3d 1351, 1369–70 (Ct. Int'l Trade 2015) (citing *Archer Daniels Midland Co. v. United States,* 968 F. Supp. 2d 1269, 1278 (2014)). "When Commerce is faced with the decision to choose between two alternatives and one alternative is favored over the other in its eyes, then it has the discretion to choose accordingly if its selection is reasonable." *Mosaic Co.*, 589 F. Supp. 3d at 1314 (quoting *Timken Co. v. United States*, 788 F. Supp. 1216, 1220 (Ct.

Int'l Trade 1992)) (bracketing omitted); *see also id.* (citing *Heze Huayi Chem. Co. v. United States*, 532 F. Supp. 3d 1301, 1326 (Ct. Int'l Trade 2021)).

    B.    <u>Statement Of Facts Relating To Commerce's Selection Of The Land Benchmark</u>

        1.    Commerce Selects Data From The Doing Business Report In The <u>Preliminary Determination</u>

On April 1, 2024, Commerce published the preliminary determination, preliminarily calculating a subsidy rate of 2.84 percent *ad valorem* for Stapimex. *Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 89 Fed. Reg. 22,374 (Dep't of Commerce, Apr. 1, 2024) (*Preliminary Determination*), and accompanying Decision Memorandum for the Preliminary Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam (Dep't of Commerce, Mar. 25, 2024), available at barcode 4532225-02 (last visited on July 15, 2025) ("*Preliminary Decision Memorandum*").

Among other programs, Commerce investigated the government of Vietnam's provision of goods or services for LTAR, including the "Exemption or Reduction of Rents for Encouraged Industries" program. *See Preliminary Decision Memorandum* at 36-38. The government of Vietnam reported that it provided Stapimex with exemptions or reductions on land rent pursuant to certain authorities authorizing reduced rent for (among other eligibility criteria) land in areas facing "difficult socio-economic conditions, as well as land used for aquaculture{.}" *Id.* at 36 (citation omitted).

Stapimex, in turn, reported that it was exempted from paying a portion of rent on its An Phu factory to the government of Vietnam "for the period of April 2008 through March 2023." *Preliminary Decision Memorandum* at 37 (citing, *e.g.*, Stapimex Section III Response at 53-54, P.D. 272 at bar code 4498745-01, C.D. 100, at bar code 4498000-01 (Jan. 26, 2024)) (other citations omitted). Another factory—the New Dragon factory—was eligible for benefits

"because it processes aquatic products for export and employs at least 20 people per year in an area with difficult socio-economic conditions." *Id.* at 37 (citing, *e.g.*, Stapimex Section III Response at 62-64, P.D. 272 at bar code 4498745-01, C.D. 100, at bar code 4498000-01 (Jan. 26, 2024) (other citations omitted). Finally, Stapimex reported that it "lease{d} a portion of its Green Farm land through the People's Committee of Soc Trang Province." *Id.* (citing Stapimex Section III Response at 72-74, P.D. 272 at bar code 4498745-01, C.D. 100, at bar code 4498000-01 (Jan. 26, 2024)).

Commerce preliminarily determined that the "Exemption or Reduction of Rents for Encouraged Industries" program was countervailable, and that Stapimex benefitted from the program during the period of investigation. *Preliminary Decision Memorandum* at 37; *see also* 36-38. Commerce preliminarily determined that it could not rely on first- or second-tier benchmarks to assess the benefits from the provision of land at LTAR in Vietnam, and instead applied a tier-three analysis. *See id.* at 19 (citing *Polyethylene Retail Carrier Bags from the Socialist Republic of Vietnam* (*Carrier Bags from Vietnam*), 75 Fed. Reg. 16,428 (Dep't of Commerce, Apr. 1, 2020) (final affirmative countervailing duty determination), and accompanying Issues and Decision Memorandum (Decision Memorandum) at Cmt. 9). As Commerce explained, the prices for land in Vietnam "were not market-determined" because the government of Vietnam "retained ultimate ownership of all land in Vietnam," with "government-determined land prices" providing the "starting point for all land prices in Vietnam." *Preliminary Decision Memorandum* at 19 (citing *Carrier Bags from Vietnam*, Decision Memorandum at Cmt. 9); *see also id.* (citing, *e.g.*, Land Analysis Memorandum, P.D. 112-113 at bar codes 4473152-01 to 4473152-02 (Dec. 4, 2023)).

In applying the tier-three analysis, Commerce selected an external land benchmark by analyzing "comparable market-based prices in another country at a comparable level of economic development within the geographic vicinity of Vietnam." *Preliminary Decision Memorandum* at 19. The petitioner placed several sources of information on the record, including the Cost of Doing Business Report, which included industrial land rental prices in 2022. *Id.* at 19-20 (citing Petitioner's Benchmark Submission at 2 and Exhibit 1, P.D. 347-348, at bar codes 4514863-01 to 4514863-02 (Feb. 26, 2024)). Commerce preliminarily determined to use the data in the Cost of Doing Business Report because they "reflect land rental prices by region over the {period of investigation}," consistent with Commerce's methodology. *Id.* at 20 (citing *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 78 Fed. Reg. 33,342 (Dep't of Commerce, June 4, 2013) (preliminary determination), and accompanying Preliminary Decision Memorandum (PDM) at 15-16, *unchanged in Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination*, 78 Fed. Reg. 50,387 (Dep't of Commerce, Aug. 19, 2013), and accompanying Issues and Decision Memorandum at 'Land Benchmarks' and Comment 6).

The petitioners also placed four other sources of information on the record, which Commerce preliminarily determined were less suitable for use as a benchmark than the Cost of Doing Business Report. *Preliminary Decision Memorandum* at 20 (citing Benchmark Submission Exs. 2-5, P.D. 348-353, at bar codes 4514863-02 to 4514863-07 (Feb. 26, 2024)). Commerce preliminarily determined that the Thailand Board of Investment's website, which included rental rates from different industrial zones, was less suitable because it contained rates "for individual industrial zones, which are more specific than data used in previous cases{.}" *Id.* (citing, *e.g.*, Benchmark Submission at 2, Ex. 2, P.D. 347, P.D. 349, at bar codes 514863-01,

514863-03 (Feb. 26, 2024)).  Second, the Thailand Board of Investment's "Cost of Doing Business in Thailand" from November 2021, reflected land prices from November 2021 that "were not contemporaneous with the {period of investigation}."  *Id.* (citing Benchmark Submission at 2, Ex. 3, P.D. 347, P.D. 350-352, at bar codes 514863-01, 514863-04 to 06 (Feb. 26, 2024)).  Third, the "Thailand Manufacturing Property, Market Overview 2022," produced by Knight Frank, provided prices for serviced industrial land plots, but Commerce determined that "the prices included reflect land purchase prices rather than land rental prices."  *Id.* at 19-20 (citing Benchmark Submission at 2, Ex. 4, P.D. 347, 353, at bar codes 4514863-01 and 4514863-07 (Feb. 26, 2024)).  Finally, Commerce determined that a webpage entitled "Cost of Doing Business" from the Philippines' PHIVIDEC Industrial Authority (PHIVIDEC Report) was "unreliable" because (1) the land rental rate data is not dated, and (2) the webpage was "unclear as to what the basis for the rental rates are."  *Id.* (citing Benchmark Submission at 2, Ex. 5, P.D. 347, 353, at bar codes 4514863-01 and 4514863-07 (Feb. 26, 2024)).

Having chosen the benchmark data from the Cost of Doing Business Report, which is "reported on a region-specific basis," Commerce selected data for the Central Region of Thailand, which is the region "with the closest population density" to the province in which Stapimex's facilities are located.  *Id.* at 20-21 (citing Memorandum, Placement of Additional Information on the Record, Att. 2-3, P.D. 415-417, at bar codes 4533337-01 to 4533337-03 (Mar. 27, 2024)); Stapimex Section III Response at 5-6, P.D. 272 at bar code 4498745-01, C.D. 100, at bar code 4498000-01 (Jan. 26, 2024)).

      2.    <u>Interested Parties File Case Briefs Regarding The Benchmark For Land</u>

In September 2024, Stapimex and the government of Vietnam filed case briefs disputing the use of data from the Cost of Doing Business Report as the benchmark to value land rented

from government authorities.  Stapimex Case Br., P.D. 495, at bar code 4628374 (Sept. 10, 2024); GOV Case Br., P.D. 494, at bar code 4628054-01, C.D. 382, at bar code 4628053-01 (Sept. 10, 2024).  Stapimex argued that it "owns its factories and rents only raw land," and that there was "no evidence on the record" that the Cost of Doing Business Report data used in the preliminary determination was "for raw land."  Stapimex Case Br. at 1, P.D. 495, at bar code 4628374 (Sept. 10, 2024).  Stapimex also argued that the Cost of Doing Business Report data may reflect "selling prices rather than rental prices."  *Id.* at 2.

According to Stapimex, the PHIVIDEC Report offered "{t}he only information on the record for rental prices of raw land{.}"  *Id.*  Stapimex disagreed that the PHIVIDEC Report was undated, and argued that it was "reasonable to conclude that the prices offered by PHIVIDEC were valid on February 26, 2024."  *Id.*  Stapimex also disagreed that the basis for the PHIVIDEC Report data was unclear, arguing that it reflected "separate rental rates for various levels of commercial and industrial raw land, showing lease rates per square meter per year{.}"  *Id.*.  Finally, Stapimex argued that the appropriate data to use were the PHIVIDEC Report data for "industrial lower" to "match the land in Vietnam" rented by Stapimex.  *Id.* at 2-3.

The government of Vietnam also argued the benchmark was improperly based on "data on the rental for industrial property which applies to built warehouse or factory."  GOV Case Br. at 9-10, P.D. 494, at bar code 4628054-01, C.D. 382, at bar code 4628053-01 (Sept. 10, 2024).

The American Shrimp Processors Association responded that Commerce's tier-three analysis properly used comparable market-based prices from "another country at a comparable level of economic development within the geographic vicinity of Vietnam."  Petitioner Rebuttal at 3, P.D. 501, at bar code 4632054-01 (Sept. 16, 2024) (quoting *Preliminary Decision Memorandum* at 19).  It argued that the Cost of Doing Business Report data used in the

preliminary determination provided "a {s}uitable {b}enchmark," and that there was "no reason to conclude that the rental prices listed in {those data} include structures in addition to land." *Id.* at 4. According to petitioner, Stapimex's claim that the data was "somehow inapplicable to 'raw land' {was} pure supposition." *Id.* The petitioner also argued that Commerce had correctly determined that the PHIVIDEC Report data was "unsuitable for benchmark purposes given the superior {Cost of Doing Business Report} data on the record{.}" *Id.* at 6-7.

### 3.    Commerce Issues The Final Determination

On October 28, 2024, Commerce issued the final determination, calculating a subsidy rate of 2.84 percent *ad valorem* for Stapimex. *See Final Determination*, 89 Fed. Reg. at 85,501. Commerce continued to determine that the data from the Cost of Doing Business Report provided "the best benchmarks for valuing land rents in this investigation." *Decision Memorandum* at 15 (citing Petitioner's Benchmark Submission, Ex. 1, P.D. 348, at bar code 4514863-02 (Feb. 26, 2024)). "{U}nlike the other benchmark sources on the record, these benchmarks reflect land rental prices by region over the {period of investigation}." *Id.*

Commerce was not persuaded by arguments that the Cost of Doing Business Report data "may not be for 'raw land,'" but rather for "logistical warehouses." *Decision Memorandum* at 15 (citation omitted). Instead, Commerce explained that the data are "for 'rental industrial and logistics property,'" and did not indicate the land is "only for logistical warehouses" as claimed by Stapimex. *Id.* (citation omitted). With respect to the argument that the data reflected land *purchase* prices rather than rental prices, Commerce found "that a reasonable interpretation of the title"—*i.e.*, "Rental Industrial and Logistics Property"—reflected "rental prices, not selling prices{.}" *Id.* (citing Petitioner's Benchmark Submission at Ex. 1, P.D. 348, at bar code 4514863-02 (Feb. 26, 2024)).

Finally, Commerce continued to determine that the land prices from the PHIVIDEC Report were not "the best information available on the record to use as the land benchmark in this investigation." *Decision Memorandum* at 17; *see also* Benchmark Submission at Ex 5, P.D. 353, at bar code 4514863-07 (Feb. 26, 2024). In response to Stapimex's argument that a date appears on the submission (February 26, 2024), Commerce explained that this "appears to be the date that the data was accessed, not the date when the PHIVIDEC data was released." *Id.* at 16. "Moreover, the PHIVIDEC does not list the dates of the data used to compile its listed land lease rates." *Id.* at 16-17. Finally, Commerce was not persuaded by Stapimex's argument that the PHIVIDEC Report data was "the only information on the record for rental prices of raw land." *Id.* at 17 (citation omitted). Commerce found there was "nothing in the exhibit to indicate that the 'industrial lower' PHIVIDEC lease rates are for raw land." *Decision Memorandum* at 17 (citation omitted).

C.   Commerce Reasonably Selected The Land Rental Data From The Cost Of Doing Business Report As The Best Available Information To Use As A Benchmark For Land

Substantial evidence supports Commerce's determination that the land rental data from the Cost of Doing Business Report provides the "best benchmarks for valuing land rents in this investigation." *Decision Memorandum* at 15 (citing Benchmark Submission, Ex. 1, P.D. 348, at bar code 4514863-02 (Feb. 26, 2024)). As Commerce explained, data from the Cost of Doing Business report reflects land prices by region that were contemporaneous with the period of investigation. *Id.* Commerce reasonably preferred the Cost of Doing Business Report data to the PHIVIDEC Report advocated by Stapimex, which is "not dated" and does "not list the dates of the data used to compile {the} listed land lease rates." *Id.* at 15-16 (discussing Benchmark Submission, Ex. 5, P.D. 353, at bar code 4514863-07 (Feb. 26, 2024)). As demonstrated below,

Stapimex's challenges to Commerce's benchmark are unpersuasive. *See generally* Pl. Br. at 11-16, ECF No. 34-1.

          1.     Substantial Evidence Supports Commerce's Finding That The PHIVIDEC
                Report Is Undated

First, Stapimex disagrees with Commerce's determination that the PHIVIDEC Report was undated, arguing that "the PHIVIDEC data did have a date on it, February 26, 2024." Pl. Br. at 12. However, the petitioner submitted the benchmark data on February 26, 2024, *see* Benchmark Submission, Ex. 5, P.D. 353, at bar code 4514863-07, so it was reasonable for Commerce to conclude that this date "appears to be the date that the data was accessed, not the date when the PHIVIDEC data was released," *Decision Memorandum* at 16.

As Commerce further explained, "{t}he only date referenced in the PHIVIDEC exhibit is calendar year 2016 (for both the Power and Water Rates), which is less contemporaneous" with the period of investigation than the data in the Cost of Doing Business Report, which reflected "land rental prices by region over the {period of investigation}." *Decision Memorandum* at 15, 17 (citing Benchmark Submission, Ex. 5, P.D. 353, at bar code 4514863-07 (Feb. 26, 2024)). Stapimex does not dispute the 2016 dates listed in the PHIVIDEC Report, nor did Stapimex otherwise submit information on the record to elucidate the date when the data used in the PHIVIDEC Report were collected.

"{T}he burden of creating an adequate record lies with interested parties and not with Commerce." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (internal citation, quotation marks, and bracketing omitted). Having failed to submit information on the record to support its current arguments, Stapimex simply disagrees with Commerce's findings based on the record data. Because a reasonable person could conclude that the PHIVIDEC Report does not list "the dates of the data used the compile {the} listed land lease rates."

Commerce's determination is supported by substantial evidence. *Decision Memorandum* at 16-17 (citing Benchmark Submission, Ex. 5, P.D. 353, at bar code 4514863-07 (Feb. 26, 2024)); *U.S. Steel Corp. v. United States*, 953 F. Supp. 2d 1332, 1336 (Ct. Int'l Trade 2013) (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (stating "{s}ubstantial evidence exists on the record when there is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'").

Stapimex nonetheless asks the Court to "remand this case to Commerce to re-open the record" to allow Stapimex "to clarify the PHIVIDEC information." Pl. Br. at 12. However, Stapimex had the opportunity to rebut, to clarify, or to correct the PHIVIDEC Report when that information was submitted by petitioners. *See* 19 C.F.R. § 351.301(c)(3)(iv). In addition to its failure to rebut or to clarify the PHIVIDEC Report, Stapimex did not submit any benchmark information of its own. Having failed to submit information on the record during the investigation, Stapimex is not entitled to reopen the record after the administrative proceedings are completed. *See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277 (Fed. Cir. 2012) (agreeing that this Court "exceeded its authority when it ordered Commerce to reopen and expand the agency record"); *see also Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 542-44 (1978) (explaining that agencies should generally "be free to fashion their own rules of procedure").

It would be "improper in this case . . . to remand and *require* that Commerce reopen and supplement the record." *Essar Steel*, 678 F.3d at 1278. "To allow constant reopening and supplementation of the record would lead to inefficiency and delay in finality." *Id.* at 1277. Doing so would "usurp{} agency power, undermine{} Commerce's ability to administer the

statute entrusted to it, contradict{} important principles of finality, and discourage{} compliance." *Id.* at 1278. Thus, having failed to develop the record during the investigation to support its current argument, Stapimex is not entitled to a second bite of the apple.

2.    Stapimex Failed To Submit Evidence Regarding The Data Used In The
PHIVIDEC Report And The Doing Business Report

Stapimex also argues that Commerce should have found that the data from the PHIVIDEC Report were more comparable to the rental of land used by Stapimex. *See* Pl. Br. at 12-14. Again, however, Stapimex failed to submit record evidence regarding the source of the data in the Cost of Doing Business Report or the PHIVIDEC Report, and now asks the Court to draw Stapimex's preferred inferences from the data. Stapimex's arguments are unpersuasive, and Commerce's findings are supported by substantial evidence in the record. *See Decision Memorandum* at 15-17.

For example, Stapimex argues that the PHIVIDEC Report data for "Industrial Lower" rent prices reflect "rental prices for raw land," whereas the Cost of Doing Business data for "Rental industrial and logistics property" reflect prices for both "industrial land *and* land with logistical structures on it." Pl. Br. at 12. However, Commerce explained that "nothing in the PHIVIDEC report indicates that the land lease prices for "industrial lower" rents were "for *raw* land." *Decision Memorandum* at 17 (citation omitted, emphasis added); *see also* Benchmark Submission Ex. 5, P.D. 353, at bar codes 4514863-07 (Feb. 26, 2024)). Stapimex's reference to the title of the chart—for "Land Lease Rates"—does not support its argument that all listed data is for "raw" land, when the types of land leases include "Commercial Premium Industrial," "General Industrial," and "Industrial Lower." Benchmark Submission, Ex. 5 at 14-15, P.D. 353, at bar codes 4514863-07 (Feb. 26, 2024). Although a "{r}aw lot" is one type of "General Industrial" land leases, this supports only that the General Industrial lease rates include some raw

14

land, not that all the land lease rates (or the Industrial Lower lease rates) listed are for raw land.
*See id.*

By the same token, Stapimex has not established that the "rental industrial and logistics
property" data in the Doing Business Report reflect only "logistical structures."  *See* Pl. Br. at 12.
As Commerce explained, "{t}he benchmark data does not indicate that the land is *only* for
logistical warehouses{.}"  *Decision Memorandum* at 15 (emphasis added).  Stapimex did not
submit evidence to Commerce to support its current argument, and thus is left arguing that
Commerce should have made different inferences based on the "face" of the report.  Pl. Br. at 12.
Because Commerce reasonably determined that the "rental and industrial logistics property" data
in the Doing Business Report were not limited to logistical warehouses, its finding is supported
by substantial evidence.  *See U.S. Steel Corp.*, 953 F. Supp. 2d 1332, 1336 (Ct. Int'l Trade 2013)
(quoting *Nippon Steel*, 337 F.3d at 1379; *Consol. Edison*, 305 U.S. at 229 (defining "substantial
evidence" as "'such relevant evidence as a reasonable mind might accept as adequate to support
a conclusion'").

To the extent Stapimex argues merely that the data in the Doing Business Report *could*
include land and land with "warehouses" or other "industrial buildings", Pl. Br. at 12 (citation
omitted), Stapimex has not shown that the same is not true for the "Commercial Premium
Industrial," "General Industrial," and "Industrial Lower" in the PHIVIDEC Report.  *See*
Benchmark Submissions, Ex. 5 at 14-15, P.D. 353, at bar codes 4514863-07 (Feb. 26, 2024).
Again, as Commerce explained, the PHIVIDEC Report does not "indicate that the 'industrial
lower' PHIVIDEC lease rates {were} for raw land."  *Decision Memorandum* at 17 (citation
omitted).

Nor may the Court consider the "search on the internet" proffered by Stapimex, which is not part of the agency record. *See* Pl. Br. at 12-13. "{A}bsent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)); 28 U.S.C. § 2637(d). Stapimex had "an opportunity to present" any evidence regarding the data in the PHIVIDEC Report and the Doing Business Report during the investigation, but did not submit the current internet search to Commerce. *See Essar Steel*, 678 F.3d at 1278 (discussing principles of timeliness and finality in administrative proceedings before Commerce). Thus, Stapimex failed to exhaust administrative remedies with respect to its reliance on the Google.com search cited in its brief.

Stapimex also waived the issue. "If a party fails to put forth a relevant argument before Commerce in its case brief, then that argument is typically considered waived and will not be considered by a court on appeal." *NEXTEEL Co. v. United States*, 461 F. Supp. 3d 1336, 1344 (Ct. Int'l Trade 2020) (citation omitted). By failing to submit the Google.com link in the case brief to Commerce, Stapimex waived reliance on that information.

Even if the Court considers Stapimex's argument that logistics real estate includes land with warehouses "and other industrial buildings with storage facilities," Pl. Br. at 12 (citation omitted), Stapimex does not demonstrate that Commerce was required to find that the land lease data for "Commercial Premium Industrial," "General Industrial," and "Industrial Lower" in the PHIVIDEC Report were limited to raw land or that the "rental industrial and logistics property" in the Doing Business Report excluded rental rates for raw land. *See* Benchmark Submissions, Exs. 1, 5, P.D. 348, 353, at bar codes 4514863-02 and 4514863-07 (Feb. 26, 2024))

16

(capitalization altered).  Again, Stapimex failed to submit evidence to Commerce regarding the

sources of data included in the PHIVIDEC Report or the Doing Business Report, and the names

and titles in those reports do not support Stapimex's current sweeping arguments.  *See*

Benchmark Submissions, Ex. 1, 5, P.D. 348, 353, at bar codes 4514863-02 and 4514863-07

(Feb. 26, 2024)).  Stapimex's disagreement does not prevent Commerce's finding from being

supported by substantial evidence.  *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619 (1966)

(citations omitted) (stating "the possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding from being supported by

substantial evidence").

> 3.    Overall, Substantial Evidence Supports Commerce's Determination That
>       The Data From The Doing Business Report Are The "Best" Benchmark
>       For Land

Finally, substantial evidence supports Commerce's determination that the data from the

Doing Business Report are the "best" benchmark for land.  *Decision Memorandum* at 15.  A

reasonable mind could conclude that by providing land rental data that are contemporaneous

with the period of investigation, the Doing Business Report provides a better land benchmark

than the PHIVIDEC Report data, which is undated.

As an initial matter, Commerce reasonably preferred a source that provided

contemporaneous data.  This Court has recognized that contemporaneity is one of the factors that

may be considered in evaluating tier three benchmarks, and has found Commerce's selection of a

non-contemporaneous benchmark to be unreasonable.  *See, e.g.*, *Risen Energy Co., Ltd. v. United*

*States*, 570 F. Supp. 3d 1369, 1375-76 (Ct. Int'l Trade 2022) (remanding Commerce's selection

of a "stale" benchmark).  In this case, the PHIVIDEC Report does not contain date information

at all.  *See Decision Memorandum* at 16-17;  *Preliminary Decision Memorandum* at 20;

Benchmark Submission Ex. 5 at 14-15, P.D. 353, at bar codes 4514863-07 (Feb. 26, 2024).  By contrast, the Cost of Doing Business Report breaks out land prices by year and clearly indicates land prices for 2022, which is the period of investigation.  *See* Benchmark Submissions, Ex. 1 at 15, P.D. 348, at bar code 4514863-02 (Feb. 26, 2024).   Stapimex argues that it is better to have "precise data," Pl. Br. at 12, but fails to explain how the PHIVIDEC Report data are precise if undated, thus preventing Commerce from assessing its contemporaneity with the period of investigation.

Finally, even assuming *arguendo* that the prices in the PHIVIDEC Report pertained solely to raw land, that would not resolve the problem that the PHIVIDEC data are undated, particularly when there is no requirement in the law that Commerce use an identical good as a benchmark.  *See Beijing Tianhai Indus. Co., Ltd. v. United States*, 52 F. Supp. 3d 1351, 1369 (Ct. Int'l Trade 2015) (citing *Archer Daniels Midland Co. v. United States*, 968 F. Supp. 2d 1269, 1278 (Ct. Int'l Trade 2014)).  Instead, the statute provides numerous factors for Commerce to assess when evaluating the adequacy of remuneration.  *See* 19 U.S.C. § 1677(5) (providing that the "prevailing market conditions" that Commerce must consider when evaluating the adequacy of remuneration "include price, quality, availability, marketability, transportation, and other conditions of purchase or sale.").  The relevant regulation requires only that Commerce "measure the adequacy of remuneration by assessing whether the government price is consistent with market principles."  *See* 19 C.F.R. § 351.511(a)(2)(iii).  There is no requirement in the regulation or the statute that Commerce elevate the degree of comparability of goods over all other factors when selecting a tier-three benchmark.

"When Commerce is faced with the decision to choose between two alternatives and one alternative is favored over the other in {Commerce's} eyes, then {Commerce has} the discretion

to choose accordingly if {its} selection is reasonable." *Mosaic*, 589 F. Supp. 3d at 1314

(quoting *Timken*, 788 F. Supp. at 1220). Commerce reasonably declined to use the undated

PHIVIDEC Report and instead used the Doing Business Report—which contains land rental data

that are contemporaneous with the period of investigation. *See Decision Memorandum* at 15-17.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's final

determination and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

Of Counsel:

SPENCER NEFF
Attorney
Office of the Chief Counsel for
    Trade Enforcement & Compliance
U.S. Department of Commerce

/s/ Emma E. Bond
EMMA E. BOND
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-7968

July 16, 2024

Attorneys for Defendant

19

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains no more than 5,333 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

Dated: July 16, 2025          <u>/s/ Emma E. Bond</u>
                              Emma E. Bond
                              Counsel for Defendant

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  LEO M. GORDON, SENIOR JUDGE**

| | |
|---|---|
| SOC TRANG SEAFOOD JOINT STOCK CO., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Court No. 25-00030 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| AD HOC SHRIMP TRADE ACTION | ) |
| COMMITTEE and AMERICAN SHRIMP | ) |
| PROCESSORS ASSOCIATION, | ) |
| | ) |
| Defendant-Intervenors. | ) |

**ORDER**

Upon consideration of the motion for judgment upon the agency record filed by plaintiff, all responses thereto, the administrative record, and other pertinent papers, it is hereby

ORDERED that the motion is DENIED; and it is further

ORDERED that the Department of Commerce's final determination in this matter is sustained; and it is further

Court No. 25-0030

ORDERED that judgment is entered in favor of the United States.


Dated: _____, 2025          _____
       New York, NY                       JUDGE