# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SOC TRANG SEAFOOD JOINT STOCK COMPANY, ) ) ) | |
| Plaintiff, ) ) | Court No. 25-00030 |
| v. ) ) | Hon. Leo M. Gordon |
| UNITED STATES, ) ) | Judge |
| Defendant, ) ) | |
| and ) ) | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, et. al., ) ) ) | |
| Defendant-Intervenors. ) ) | |

**DEFENDANT-INTERVENOR THE AMERICAN SHRIMP PROCESSORS ASSOCIATION'S RESPONSE IN OPPOSITION TO PLAINTIFF SOC TRANG SEAFOOD JOINT STOCK COMPANY'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Roger B. Schagrin
Elizabeth J. Drake
Justin M. Neuman*
**SCHAGRIN ASSOCIATES**
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001

*Counsel for Defendant-Intervenor, the American Shrimp Processors Association*

*Admitted only in Ohio. Practice limited to federal agencies and courts.

July 23, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. II

STATEMENT PURSUANT TO RULE 56.2 ........................................................ 1

    1.    ADMINISTRATIVE DETERMINATION TO BE REVIEWED ......... 1

    2.    ISSUES PRESENTED ............................................................................. 2

    3.    REASONS FOR SUPPORTING THE DETERMINATION ................ 2

STANDARD OF REVIEW ..................................................................................... 2

STATEMENT OF FACTS ...................................................................................... 3

ARGUMENT ............................................................................................................ 3

I.    COMMERCE'S DETERMINATION TO RELY ON THE BOI'S "COST OF DOING BUSINESS IN THAILAND 2023" PUBLICATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW ......................................................................................................... 3

    A.    IT WAS APPROPRIATE FOR COMMERCE TO SELECT THE BOI'S "COST OF DOING BUSINESS IN THAILAND 2023" AS A BENCHMARK .................................................................................................. 5

    B.    IT WAS APPROPRIATE FOR COMMERCE TO REJECT STAPIMEX'S ARGUMENTS THAT THE THAI LAND BENCHMARK SELECTED BY COMMERCE WAS NOT COMPARABLE TO LAND RENTED IN VIETNAM ................................................................................ 6

II.    COMMERCE'S REJECTION OF LAND PRICES FROM THE PHILIPPINES IS SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IN ACCORDANCE WITH LAW ................................................................. 7

    A.    IT WAS APPROPRIATE FOR COMMERCE TO CONCLUDE THAT THE PHIVIDEC DATA WERE NOT DATED ............................................ 7

    B.    IT WAS APPROPRIATE FOR COMMERCE TO REJECT STAPIMEX'S ARGUMENT THAT THE PHIVIDEC DATA REPRESENT RAW LAND PRICES ........................................................ 8

CONCLUSION ....................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Canadian Solar Inc. v. United States,*
    537 F. Supp. 3d 1380 (Ct. Int'l Trade 2020) ............................................................. 4, 5

*Catfish Farmers of Am. v. United States,*
    641 F. Supp. 2d 1362 (Ct. Int'l Trade 2009) ................................................................ 3

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ....................................................................................................... 2

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) .................................................................................................... 2, 3

*Lucent Techs., Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009) .................................................................................. 6, 9

*Matsushita Elec. Indus. Co. v. United States,*
    750 F.2d 927 (Fed. Cir. 1984) ....................................................................................... 2

*Novosteel SA v. United States,*
    284 F.3d 1261 (Fed. Cir. 2002) .................................................................................. 6, 9

*POSCO v. United States,*
    977 F.3d 1369 (Fed. Cir. 2020) ...................................................................................... 4

*Risen Energy Co. v. United States*,
    570 F. Supp. 3d 1369 (Ct. Int'l Trade 2022) ................................................................. 5

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................................................................. 2

19 U.S.C. § 1677(5)(E)(iv) ................................................................................................. 3

**Regulations**

19 C.F.R. § 351.511(a)(2) ............................................................................................... 3, 4

**Federal Register Notices and Decision Memoranda**

Decision Memorandum for the Preliminary Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam (Dep't of Commerce Mar. 25, 2024) ................................................................................. 4, 5, 7

*Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 89 Fed. Reg. 85,500 (Dep't of Commerce Oct. 28, 2024) ................................................................................. 1, 10

*Frozen Warmwater Shrimp From Ecuador, India, and the Socialist Republic of Vietnam*, 89 Fed. Reg. 104,982 (Dep't Commerce Dec. 26, 2024) ........................................................................ 1

Issues and Decision Memorandum for the Final Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam (Dep't of Commerce Oct. 21, 2024)................................................................................. 2, 6, 8

Defendant-Intervenor, the American Shrimp Processors Association ("ASPA"), hereby submits its response to Plaintiff Soc Trang Seafood Joint Stock Company's ("Stapimex") Rule 56.2 motion for judgment on the agency record challenging the U.S. Department of Commerce's ("Commerce" or the "Department") countervailing duty ("CVD") determination leading to the CVD order on frozen warmwater shrimp ("shrimp") from the Socialist Republic of Vietnam ("Vietnam"). Memorandum of Law in Support of Plaintiff Soc Trang Seafood Joint Stock Company's (STAPIMEX) 56.2 Motion for Judgment Upon the Agency Record (May 16, 2025) ("Stapimex Br.").

## STATEMENT PURSUANT TO RULE 56.2

### 1. ADMINISTRATIVE DETERMINATION TO BE REVIEWED

The administrative determination at issue is Commerce's final affirmative CVD determination leading to the issuance of the CVD order on shrimp from Vietnam. *Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 89 Fed. Reg. 85,500 (Dep't of Commerce Oct. 28, 2024) ("*Final Determination*"), P.R. 514;[1] *Frozen Warmwater Shrimp From Ecuador, India, and the Socialist Republic of Vietnam*, 89 Fed. Reg. 104,982 (Dep't Commerce Dec. 26, 2024), P.R. 518.

The *Final Determination* was published in the *Federal Register* on October 28, 2024, and it was based on a period of investigation ("POI") covering January 1, 2022 to December 31, 2022. *Final Determination*, 89 Fed. Reg. at 85,500, P.R. 514. The challenged determinations, findings, and conclusions are set out in the accompanying "Issues and Decision Memorandum." Issues and Decision Memorandum for the Final Determination of the Countervailing Duty

---

[1] References to documents in the public administrative record are cited to "P.R." and the relevant document number.

Investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam (Dep't of Commerce Oct. 21, 2024), available at https://access.trade.gov/public/FRNoticesListLayout.aspx at barcode 4653658-02 (last visited on July 22, 2025) ("IDM"), P.R. 513.

## 2. ISSUES PRESENTED

1. Whether Commerce properly selected the Thailand Board of Investment's ("BOI") "Cost of Doing Business in Thailand 2023" report as an appropriate tier three benchmark to measure the adequacy or remuneration for Stapimex's use of the "Exemption or Reduction of Rents for Encouraged Industries" program.

ASPA's position: Yes.

2. Whether it was appropriate for Commerce to dismiss the "Cost of Doing Business" from the Philippines' PHIVIDEC Industrial Authority website as an alternative tier three benchmark.

ASPA's position: Yes.

## 3. REASONS FOR SUPPORTING THE DETERMINATION

ASPA's reasons for supporting the administrative determination are set out in the Argument section below.

## STANDARD OF REVIEW

Final Commerce determinations in CVD investigations may be held unlawful only if "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *Catfish Farmers of Am. v. United States*, 641 F. Supp.

2

2d 1362, 1366 (Ct. Int'l Trade 2009) ("The administrative record for an… administrative review may support two or more reasonable, though inconsistent, determinations on a given issue.").

## STATEMENT OF FACTS

ASPA incorporates by reference the Statement of Facts submitted by the United States in its brief. Defendant's Response to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record (July 16, 2023) ("USDOJ Brief") at 5-11. However, ASPA wishes to highlight that it alone filed potential benchmarks in the underlying investigation. No other parties, including Stapimex, submitted benchmark information or information to rebut ASPA's proposed benchmarks. *See* USDOJ Brief at 7-8.

## ARGUMENT

I. **COMMERCE'S DETERMINATION TO RELY ON THE BOI'S "COST OF DOING BUSINESS IN THAILAND 2023" PUBLICATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW**

In analyzing the provision of land for less than adequate remuneration, 19 U.S.C. § 1677(5)(E)(iv) calls for Commerce to set benchmarks that reflect "prevailing market conditions." The statute further defines prevailing market conditions as including "price, quality, availability, marketability, transportation, and other conditions of purchase or sale." *Id.* Commerce's regulations provide additional guidance as to how Commerce selects appropriate market-determined benchmarks for measuring the adequacy of remuneration for government-provided goods or services. *See* 19 C.F.R. § 351.511(a)(2). These potential benchmarks are listed in hierarchal order by preference. Under a tier one analysis, Commerce compares the government price to an actual market-based price for the good or service under investigation in the country in question. When an in-country, market-based price is unavailable, Commerce will move to a tier two analysis, comparing the government price to a

world-market price if the world-market price is available to purchasers in the country in question. When both an in-country, market-based price and a world-market price are unavailable, Commerce conducts a tier three analysis to determine whether the government price is consistent with market principles. *See id. See also POSCO v. United States*, 977 F.3d 1369, 1372 (Fed. Cir. 2020). If Commerce determines that the government price is not consistent with market principles, it will look to construct an external benchmark. *See Canadian Solar Inc. v. United States*, 537 F. Supp. 3d 1380, 1389 n.6 (Ct. Int'l Trade 2021) ("*Canadian Solar*").

As a result of the Government of Vietnam's control of the land market, Commerce determined that there were no market-determined land prices in Vietnam available to use as a "tier one" benchmark as called for in 19 C.F.R. § 351.511(a)(2)(i). Nor was a tier-two world market price benchmark available, as land in other countries is not available to purchasers or renters in Vietnam. *See* 19 C.F.R. § 351.511(a)(2)(ii); *see also Canadian Solar*, 537 F. Supp. 3d at 1390 (Commerce "reasonably concluded that land, as an *in situ* good, is generally not available to an in-country purchaser on the world market and therefore not suitable for a tier two benchmark… Accordingly, Commerce's determination that a tier two benchmark was inappropriate was reasonable and its subsequent rejection of {respondent's} world price benchmark data as a tier two benchmark was lawful" (internal citations omitted)).

Commerce therefore elected to use a tier three benchmark by seeking out "comparable market-based prices in another country at a comparable level of economic development within the geographic vicinity of Vietnam." Decision Memorandum for the Preliminary Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam (Dep't of Commerce Mar. 25, 2024), available at

4

https://access.trade.gov/public/FRNoticesListLayout.aspx at barcode 4532225-02 (last visited July 22, 2025) ("PDM") at 19, P.R. 412.

### A. It Was Appropriate for Commerce to Select the BOI's "Cost of Doing Business in Thailand 2023" as a Benchmark

Commerce reasonably selected Thai land rental prices to value the adequacy of remuneration for Stapimex's leases of land in Vietnam. The land rental prices in the BOI's "Cost of Doing Business in Thailand 2023" are the most robust data available on the record because they break down land rental prices by region, and they are contemporaneous with the POI. Commerce appropriately compared regional population data in the BOI's publication with that of Vietnam. PDM at 20, P.R. 412. The Court has previously acknowledged that regional population density is a relevant factor in Commerce's land benchmark analysis and represents substantial evidence. *See Canadian Solar*, 537 F. Supp. 3d at 1391 ("Based on similarity of geographic location, per capita income, regional population density, and economic development Commerce's chosen tier three benchmark: land prices for industrial zones in Thailand from 2010, is supported by substantial evidence.")

Moreover, Commerce correctly concluded that the data presented in the BOI's "Cost of Doing Business in Thailand 2023" was suitable for its benchmark analysis because it was the only source submitted on the record that contained data for 2022 that were contemporaneous with the POI. The contemporaneity of data is a relevant factor to Commerce's analysis, as the Court has acknowledged. *See id.* at 1391–92 n.9 ("{I}t was within Commerce's discretion to weigh the contemporaneous nature of the data against other factors including economic comparability and geographic proximity…."). *See also Risen Energy Co. v. United States*, 570 F. Supp. 3d 1369, 1375 (Ct. Int'l Trade 2022) (where the "staleness" of non-contemporaneous data may result in other data being preferred for benchmark purposes). The BOI data for 2022 relied

5

on by Commerce is preferable to any other data on the record because it avoids any distortions inherent in inflating or deflating data that is not contemporaneous with the POI. Commerce's reliance on this data is therefore reasonable and supported by substantial evidence.

### B. It Was Appropriate for Commerce to Reject Stapimex's Arguments that the Thai Land Benchmark Selected by Commerce Was Not Comparable to Land Rented in Vietnam

There is no substantial evidence on the record that land prices listed in the BOI report only reflect improved logistical property with structures on it, as Stapimex asserts. Therefore, Commerce correctly dismissed Stapimex's arguments in the final determination that land rental prices in the BOI's "Cost of Doing Business in Thailand 2023" only refer to improved land, including logistical warehouses. IDM at 15, P.R. 513. Stapimex Br. at 13. The BOI report only indicates that the benchmark relied on by Commerce was for "Rental Industrial and Logistics Property." ASPA Benchmark Submission at Ex. 1, pg. 15, P.R. 348. Stapimex's conclusion that this land included structures is the very type of speculation rejected by the U.S. Court of Appeals for the Federal Circuit. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("*Lucent Techs*") ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F.3d 1261, 1276 (Fed. Cir. 2002) ("*Novosteel*") (internal quotation marks omitted)).

Stapimex's efforts to now mischaracterize the facts of record would have been better spent submitting actual benchmark or rebuttal benchmark information during the course of the investigation, which it neglected to do. The Court should not at this juncture reward Stapimex's negligence in developing the record, and it should hold that Commerce's finding is supported by substantial evidence.

6

II. **COMMERCE'S REJECTION OF LAND PRICES FROM THE PHILIPPINES IS SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IN ACCORDANCE WITH LAW**

As an alternative potential benchmark, ASPA provided a website printout, "Cost of Doing Business," from the Philippines' PHIVIDEC Industrial Authority. In the preliminary determination, Commerce rejected this data as unreliable because it was not dated and because it was unclear as to the basis of the rental rates. PDM at 20, P.R. 412. In the final determination, Commerce rejected Stapimex's argument that this data was in fact dated and determined that it was inappropriate to rely on this information for benchmark purposes. The Court should find that this determination was supported by substantial evidence.

    A. **It Was Appropriate for Commerce to Conclude that the PHIVIDEC Data Were Not Dated**

Stapimex incorrectly asserts that the PHIVIDEC data on the record was dated to the date of ASPA's benchmark filing. Stapimex Br. at 15. Commerce's conclusion that the land prices in the Philippines benchmark submission were undated is correct and supported by substantial evidence. As ASPA noted in its rebuttal brief in the final phase of the investigation, this time stamp,

> "is merely a clock on the website of the PHIVIDEC, indicating the time at which {ASPA} visited the site and printed the page to a PDF. It indicates that {ASPA} visited the site at 11:01:40 AM on February 26, 2024, Philippine Standard Time, or in other words, the evening before filing the benchmark submission on February 26, 2024 Eastern Standard Time. Any party visiting the PHIVIDEC website would see a similar clock indicating the time of their visit."

ASPA Rebuttal Brief at 6, P.R. 501. A close examination of the relevant exhibit clearly indicates that this time stamp is "Philippine Standard Time." ASPA Benchmark Submission at Ex. 5, P.R. 353. Commerce acknowledged as much in its final determination, noting "that this is date {*sic*} of the benchmark submission itself; thus it appears to be the date that the data was

7

accessed, not the date when the PHIVIDEC data was released." IDM at 16, P.R. 513. Commerce took the analysis even further, noting that the only date that appears in the exhibit that was related to the data therein was calendar year 2016, and that it pertained to power and water rates. *Id.* at 17, P.R. 513.

Even if the Court were to conclude, as Stapimex argues, that the prices listed on the website "were valid on February 26, 2024," there is no evidence whatsoever that these prices were relevant to the period of investigation, *i.e.*, 2022. While Stapimex considers the Department's finding to be mere "speculation," the opposite conclusion would suffer from the same defect. Stapimex Br. at 15. The data from the PHIVIDEC website would still not be contemporaneous with the period of investigation in the same manner as the superior 2022 data provided in the BOI's "Doing Business in Thailand 2023."

Given that there is no definite date tied to the PHIVIDEC data, there is no indication as to whether Commerce would need to inflate or deflate the data for it to be usable as a benchmark that can be compared to the POI. It was therefore appropriate for Commerce to reject this data, and the Court should uphold that decision as supported by substantial evidence.

  **B.**  **It Was Appropriate for Commerce to Reject Stapimex's Argument that the PHIVIDEC Data Represent Raw Land Prices**

In the final determination, Commerce appropriately rejected Stapimex's argument that the PHIVIDEC data on the record are the only information representing rental prices of raw land. IDM at 17, P.R. 513. Commerce explained that "there is nothing in the exhibit to indicate that the 'industrial lower' PHIVIDEC lease rates are for raw land." Stapimex argues that this data clearly represent raw land prices. Stapimex Br. at 15. However, this is the same type of speculation that Stapimex decries in its brief. The information available in PHIVIDEC submission is extremely limited. There is no narrative defining any of the three categories

presented, other than category descriptors that indicate that they are all industrial in nature. ASPA Benchmark Submission at Ex. 5, P.R. 353. The three categories include "Commercial Premium Industrial," "General Industrial," and "Industrial Lower". *Id.* There is no information indicating that any one of these categories is more comparable to land rented by Stapimex in terms of location or development, or why some categories are priced higher than others. Nor is there any indication whether the prices presented are for raw land or improved land. As any speculation to the contrary would not constitute substantial evidence, it was appropriate for Commerce to not reach a finding that the lease rates presented in the PHIVIDEC data were for land comparable to that leased by Stapimex. *See Lucent Techs.* 580 F.3d at 1327 ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel,* 284 F.3d at 1276 (internal quotation marks omitted)).

      The Court should therefore find that Commerce's determination to reject Stapimex's argument that only the PHIVIDEC data represented raw land prices was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, ASPA respectfully requests that this Court deny Stapimex's Rule 56.2 motion and affirm the *Final Determination*.

Respectfully submitted,

/s/ Elizabeth J. Drake
Roger B. Schagrin
Elizabeth J. Drake
Justin M. Neuman*
**SCHAGRIN ASSOCIATES**
900 Seventh Street, N.W.
Suite 500
Washington, D.C.  20001

*Counsel for Defendant-Intervenor,
the American Shrimp Processors
Association*

*Admitted only in Ohio. Practice limited to federal agencies and courts.

Dated:  July 23, 2025

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION

I, Elizabeth J. Drake, hereby certify that this brief, exclusive of the cover page, table of contents, table of authorities, certifications of counsel, and counsel's signature block, but including headings, footnotes, and quotations contains 2,549 words, according to the word count function of the word processing program used to prepare this brief, and therefore complies with the word limitations as set forth in ¶ 2(B) of the Standard Chambers Procedures of this Court.

/s/ Elizabeth J. Drake
Roger B. Schagrin
Elizabeth J. Drake
Justin M. Neuman*
**SCHAGRIN ASSOCIATES**
900 Seventh Street, N.W.
Suite 500
Washington, D.C.  20001

*Counsel for Defendant-Intervenor, the American Shrimp Processors Association*

*Admitted only in Ohio. Practice limited to federal agencies and courts.

Dated:  July 23, 2025