Slip Op. 26-3

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SOC TRANG SEAFOOD JOINT STOCK COMPANY (STAPIMEX), <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant <br><br> and <br><br> AD HOC SHRIMP TRADE ACTION COMMITTEE and AMERICAN SHRIMP PROCESSORS ASSOCIATION, <br><br> Defendant-Intervenors. | Before: Leo M. Gordon, Judge <br><br> Court No. 25-00030 |

**OPINION**

[Sustaining Commerce's final determination in the countervailing duty investigation of frozen warmwater shrimp from Vietnam.]

Dated: January 8, 2026

John J. Kenkel, International Trade Law Counselors, PLLC of Alexandria, VA, argued for Plaintiff Soc Trang Seafood Joint Stock Company.

Tate N. Walker, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. On the briefs were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel were Spencer Neff and Samuil O. Agranovich, Attorneys, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Zachary J. Walker, Picard Kentz & Rowe, LLP of Washington, D.C., argued for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee. With him on the brief was Nathaniel M. Rickard.

<u>Justin M. Neuman</u> and <u>Elizabeth J. Drake</u>, Schagrin Associates of Washington, D.C., argued for Defendant-Intervenor The American Shrimp Processors Association. With them on the brief was <u>Roger B. Schagrin</u>.

Gordon, Judge: This matter involves a challenge by Plaintiff Soc Trang Seafood Joint Stock Company ("STAPIMEX") to the U.S. Department of Commerce's ("Commerce") final determination in the countervailing duty investigation of frozen warmwater shrimp from Vietnam. See Compl., ECF No. 2; <u>Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination</u>, 89 Fed. Reg., 85,500 (Oct. 28, 2024), PR 514[1] ("<u>Final Determination</u>"), and accompanying Issues and Decision Memorandum ("<u>Decision Memorandum</u>"), PR 513; see also <u>Frozen Warmwater Shrimp From Indonesia: Antidumping Duty Order; Frozen Warmwater Shrimp From Ecuador, India, and the Socialist Republic of Vietnam: Countervailing Duty Orders</u>, 89 Fed. Reg. 104,982 (Dec. 26, 2024), PR 518. Specifically, Plaintiff challenges Commerce's finding that land rental data from the Thailand Board of Investment's Cost of Doing Business in Thailand 2023 Report provided the best benchmark to determine the benefit for Vietnam's "Exemption or Reduction of Rents for Encouraged Industries" program. See <u>Decision Memorandum</u> at Comment 4 (describing Commerce's consideration and rejection of Plaintiff's arguments in its final determination in administrative proceeding).

Before the court is Plaintiff's motion for judgment on the agency record pursuant to USCIT Rule 56.2. <u>See</u> Pl.'s 56.2 Mot. for J. on the Agency R., ECF No. 34 ("Pl.'s Mot.");

---

[1] "PR" refers to a document contained in the public administrative record. <u>See</u> ECF No. 23-4.

see also Def.'s Resp. in Opp'n, ECF No. 37 ("Def.'s Resp."); Def.-Intervenor The American Shrimp Processors Ass'n's Resp. in Opp'n, ECF No. 38; Def.-Intervenor Ad Hoc Shrimp Trade Action Committee Resp. in Opp'n, ECF No. 39; Pl.'s Reply, ECF No. 41.[2]  The court held oral argument on December 17, 2025.  See Oral Arg., ECF No. 55.  For the reasons set forth below, the court will deny Plaintiff's motion for judgment on the agency record.

### I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C § 1516a(b)(1)(B)(i).  More specifically, when reviewing agency determinations, findings or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole.  Nippon Steel Corp v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006).  Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence also has been described as "something less than

---

[2] The parties also submitted cross-motions and briefing right before oral argument regarding certain incorrect factual representations contained in Plaintiff's reply brief.  See Pl.'s Mot. for Leave to Correct Factual Statement, ECF No. 50; Def.-Intervenors' Joint Mot. to Strike Pl.'s Reply Br., ECF No. 51; see also Def.-Intervenor Ad Hoc Shrimp Trade Action Committee Resp. in Opp'n, ECF No. 52; Def.-Intervenor American Shrimp Processors Ass'n Resp., ECF No. 53; Def.'s Resp. to Mot., ECF No. 54.  As the court has adjudicated the merits of this matter without needing to reference or address the disputed material, the court concludes that these outstanding motions are denied as moot.

the weight of evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting a reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24 (3d ed. 2025). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2025).

## II. Background

As part of its countervailing duty analysis, Commerce must evaluate whether goods and services were provided to a respondent for less than adequate remuneration ("LTAR"). See 19 C.F.R. § 351.511; see also 19 U.S.C. § 1677(5)(E)(iv) (defining "benefit" for countervailing duty analysis as the receipt of goods or services for LTAR). To facilitate that evaluation, Commerce may rely on three different "tiers" of benchmarks to assess any benefits provided for LTAR. See 19 C.F.R. § 351.511(a)(2). The first two tiers allow Commerce to measure the adequacy of remuneration against a market price determined from actual transactions in the country in question, § 351.511(a)(2)(i), or from a "world market price," § 351.511(a)(2)(ii). Commerce determined that Vietnam's "Exemption or Reduction of Rents for Encouraged Industries" program was countervailable, and that STAPIMEX benefitted from the program during the period of

Court No. 25-00030 Page 5

investigation ("POI").³  See Decision Memorandum at Comment 4.  In evaluating the benefit for this program, Commerce observed that there were no usable "first-tier" or "second-tier" benchmarks available on the record.  See id. at 14 (citing Decision Memorandum for Preliminary Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam (Dep't of Commerce, Mar. 25, 2024), PR 412, at bar code 4532225-02 ("Preliminary Decision Memorandum"), as well as prior land analysis memorandum, for conclusion that "Commerce also determines that since land located and sold outside of Vietnam is not simultaneously available to an in-country purchaser within the meaning of 19 CFR [§] 351.511(a)(2)(ii), second-tier world prices are not suitable as benchmarks for land-use rights").  Accordingly, Commerce proceeded to consider the available "third-tier" sources of information put on the record by petitioner.  This information included:

> (1) the Thailand Board of Investment's (Thai BOI's) 'Cost of Doing Business in Thailand 2023,' which includes industrial and land rental prices in 2022; (2) information from the Thai BOI's website, which includes rental rates from different industrial zones; (3) Thai BOI's 'Cost of Doing Business in Thailand' from November 2021, which also includes industrial land rent prices; (4) 'Thailand Manufacturing Property, Market Overview 2022,' produced by Knight Frank which provides prices for serviced industrial land plots (Knight Frank data);

---

³ The POI was January 1, 2022, through December 31, 2022. See Decision Memorandum at 1.

and (5) a webpage entitled 'Cost of Doing Business' from the
Philippines' PHIVIDEC Industrial Authority (PHIVIDEC).

Id. at 14–15.

Ultimately, Commerce determined that land rental data from the Thai BOI's Cost of Doing Business in Thailand 2023 Report provided the best benchmark on the record. Id. at 15–17. Commerce justified its choice by noting that "unlike the other benchmark sources on the record, these benchmarks reflect land rental prices by region over the POI." See id. at 15. Commerce was unpersuaded by Plaintiff's arguments that this benchmark was flawed because it reflected prices for "logistical warehouses" rather than "raw land." Id. (noting that "this argument is unsupported by the evidence on the record," and finding that data for "rental industrial and logistics property … does not indicate that the land is only for logistical warehouses, as STAPIMEX suggests"). Commerce also rejected Plaintiff's preferred benchmark of the PHIVIDEC land rental prices as that data was undated and appeared to not be contemporaneous with the POI. Id. at 13–17 (also finding that webpage was "unclear as to what the basis for the rental rates are." (citing Benchmark Submission at 2, Ex. 5, PR 347, 353, at bar codes 4514863-01 and 4514863-07 (Feb. 26, 2024))). Commerce was unpersuaded by STAPIMEX's argument that the PHIVIDEC data was for "raw land" after finding that "there is nothing in the exhibit to indicate that the 'industrial lower' PHIVIDEC lease rates are for raw land." Id. at 17.

As a result, Commerce "continue[d] to find the PHIVIDEC data is not the best information available on the record to use as the land benchmark… [and] continued to use the land benchmark selected in the Preliminary Determination (i.e., the Thai BOI's

"Cost of Doing Business in Thailand 2023") in [its] calculations for the final determination." Id.  Plaintiff subsequently brought this action.

### III. Discussion

Plaintiff's challenge to Commerce's <u>Final Determination</u> raises a single issue: namely, "whether [Commerce]'s use of a benchmark value in Thailand for 'Rental Industrial and Logistics Property' as a benchmark for the rental of solely raw land in Vietnam by STAPIMEX was predicated on substantial evidence on the record." Pl.'s Mot. at 2.  Specifically, Plaintiff contends that Commerce's "use of a benchmark value for 'Rental Industrial <u>and</u> Logistics Property' (emphasis added) in Thailand rather than a value solely for raw land in the Philippines was not reasonable." <u>See id.</u> at 1.  Plaintiff explains the key factual circumstances as follows:

> STAPIMEX rented only raw land for its factories in the period of investigation ("POI"). STAPIMEX did not rent "industrial and logistics property."  On the record of this investigation were two sources of benchmarks for land.  The first was published information from Thailand for "Industrial <u>and</u> Logistics Property." (emphasis added).  <u>See</u> Pet. Ltr, (Feb. 26, 2025), P.R. 347–354, [sic] The second source was information from The Philippines detailing rental prices solely for raw land.  <u>See</u> Pet. ltr. (February 26, 2024; Exhibit 5). PR 353.

<u>Id.</u> at 2.  Plaintiff argues that because "STAPIMEX rented solely raw land and not logistics property,"  Commerce's "choice of using a benchmark comprised of industrial land and logistical property" was therefore unreasonable in light of the availability of alternative data on the record specific to raw land.  <u>Id.</u>

Defendant maintains that Commerce's benchmark analysis was supported by substantial evidence.  Defendant directs the court to first observe the standards governing

Commerce's selection of benchmarks, explaining that in circumstances where "Commerce is unable to conduct a tier-one or tier-two analysis because the actual market determined price and world market price are unavailable, Commerce moves on to a tier-three analysis and measures{s} the adequacy of remuneration by assessing whether the government price is consistent with market principles."  Def.'s Resp. at 4 (relying on Mosaic Co. v. United States, 46 CIT ___, ___, 589 F. Supp. 3d 1298, 1314 (2022), aff'd, Court No. 2024-1593, 2025 WL 3493279 (Fed. Cir. Dec. 5, 2025)) (internal citation and quotation marks omitted).  Defendant further explains that "[i]f Commerce determines that the government price is not consistent with market principles it will look to construct an external benchmark."  Id.  The Government emphasizes that Commerce retains significant discretion in determining such a benchmark, noting that "nothing requires Commerce to 'use prices for merchandise that are identical to a respondent's purchases.'"  Id. (quoting Beijing Tianhai Indus. Co. v. United States, 39 CIT ___, ___, 52 F. Supp. 3d 1351, 1369-70 (2015)).

Plaintiff acknowledges that "Commerce found the PHIVIDEC data to be unreliable because: (1) the land rental rate data is not dated; and (2) the 'Cost of Doing Business' webpage from PHIVIDEC is unclear as to what the basis for the rental rates are."  Pl.'s Mot. at 11.  Plaintiff maintains that "the PHIVIDEC data did have a date on it, February 26, 2024."  Id. at 12 (arguing that date of Plaintiff's data download and subsequent letter submission to Commerce should qualify as date for data).  Plaintiff maintains that "the PHIVIDEC is precise [as] it is for rental prices for raw land."  Id.  Ultimately, Plaintiff concludes that "[t]he key point is this: it is better to have precise data, i.e., only for raw

land, than imprecise, over-valued data for something STAPIMEX does not rent (logistical structures) merely because the Thai data is dated and is in a location in Thailand Commerce finds to be comparable to the location of STAPIMEX's land." Id.

As the court understands Plaintiff's position, it appears that Plaintiff is really asking the court to second-guess Commerce's selection of data from a record containing multiple flawed but reasonable options, and to reweigh the evidence on the record in evaluating the reasonableness of Commerce's ultimate selection. This the court will not do. See, e.g., Canadian Solar Inc. v. United States, 45 CIT ___, ___, 537 F. Supp. 3d 1380, 1391 (2021) (quoting Nippon Steel Corp. v. United States, 27 CIT 1856, 1859, 301 F. Supp. 2d 1355, 1360 (2003) for proposition that "the court's function is not to reweigh the evidence but rather to ascertain whether the agency's determinations are supported by substantial evidence on the record")). Rather, the court agrees with Defendant that "Commerce reasonably preferred the Cost of Doing Business Report data to the PHIVIDEC Report advocated by STAPIMEX, which is 'not dated' and does 'not list the dates of the data used to compile the} listed land lease rates.'" Def.'s Resp. at 11 (quoting Decision Memorandum at 15–16).

Defendant argues that Commerce's benchmark selection readily meets the substantial evidence standard, as it selected the best available information from the limited datasets on the record. Def.'s Resp. at 11–19. With regard to the Cost of Doing Business Report, Defendant details how Commerce "determined to use the data in the Cost of Doing Business Report because they 'reflect land rental prices by region over the

[POI],' consistent with Commerce's methodology." Id. at 7 (quoting Preliminary Decision Memorandum at 20).

With respect to the PHIVIDEC data that Plaintiff prefers, Commerce plainly explained its rationale for finding that data set inferior, stating that "[t]he only date referenced in the PHIVIDEC exhibit is calendar year 2016 (for both the Power and Water Rates), which is less contemporaneous" with the POI than the data in the Cost of Doing Business Report, which reflected "land rental prices by region over the POI." Decision Memorandum at 15, 17 (citing Benchmark Submission, Ex. 5, PR 353, at bar code 4514863-07 (Feb. 26, 2024)). Defendant emphasizes that Plaintiff "does not dispute the 2016 dates listed in the PHIVIDEC Report, nor did STAPIMEX otherwise submit information on the record to elucidate the date when the data used in the PHIVIDEC Report were collected." Def.'s Resp. at 12 (noting that "[t]he burden of creating an adequate record lies with interested parties and not with Commerce." (quoting QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).

Plaintiff attempts to limit the impact of Commerce's analysis in the Decision Memorandum. Plaintiff initially quibbled with Commerce's finding that the PHIVIDEC data was undated, and maintained that a date in fact appears on the submission (February 26, 2024); however, in its reply brief, Plaintiff concedes that the PHIVIDEC data was undated. Compare Pl.'s Mot. at 11 ("STAPIMEX argues that the PHIVIDEC data did have a date on it, February 26, 2024."); with Pl.'s Reply at 9 (conceding that "STAPIMEX now agrees that the PHIVIDEC was undated."); see also Oral Arg. at Part II, 10:15–10:45 (confirming parties' understanding of concession that PHIVIDEC data was undated, but was

Court No. 25-00030                                                                                                      Page 11

downloaded on February 26, 2024).[4]  Despite acknowledging the undated nature of the PHIVIDEC data, Plaintiff maintains that Commerce could nevertheless "deflate that data to bring it back in time and make it commensurate with what it should have been in the POI."  See Pl.'s Reply at 9.  While Plaintiff proposes an alternative path where Commerce could have adjusted the PHIVIDEC data in order to rely upon it, that path demonstrates the reasonableness of Commerce's finding that the PHIVIDEC data was not the best available information on the record for the benchmark precisely because such modification of the data would be necessary for Commerce to rely upon it.  The mere fact that Commerce could have potentially used the PHIVIDEC data does not demonstrate that Commerce acted unreasonably in selecting an alternative dataset that did not require a deflationary adjustment.  See, e.g., Mosaic Co., 46 CIT at ___, 589 F. Supp. 3d at 1314 ("When Commerce is faced with the decision to choose between two alternatives and one alternative is favored over the other in its eyes, then it has the discretion to choose accordingly if its selection is reasonable." (quoting Timken Co. v. United States, 16 CIT 142, 147, 788 F. Supp. 1216, 1220 (1992))).  Plaintiff's proffered conclusion that "there is not even a scintilla of evidence to support Commerce's decision that the PHIVIDEC

---

[4] Plaintiff's concession is unsurprising in light of Defendant's response that counters Plaintiff's February 26, 2024 date argument by observing that "Commerce explained that this 'appears to be the date that the data was accessed, not the date when the PHIVIDEC data was released.'" Def.'s Resp. at 11 (quoting Decision Memorandum at 16). Defendant also highlights Commerce's finding that "the PHIVIDEC does not list the dates of the data used to compile its listed land lease rates." Id. (quoting Decision Memorandum at 16–17).

Court No. 25-00030 Page 12

Report is unreliable," is incorrect and misapplies the standard of review.  See Pl.'s Reply at 9.

Ultimately, because the information on the record supporting the reasonableness of the findings made by Commerce, the court cannot agree with Plaintiff that Commerce acted unreasonably when it determined that the Thai BOI's "Cost of Doing Business in Thailand 2023" constituted the best available information on the record for establishing a benchmark to value land rented from government authorities.  Plaintiff's remaining arguments all go to establishing and supporting the reliability of the PHIVIDEC data on the record as an alternative basis for the land benchmark.  See Pl.'s Mot. at 15–16; Pl.'s Reply at 8–12.  Given the court's conclusion, the court need not reach Plaintiff's other arguments regarding the PHIVIDEC data.

### IV. Conclusion

For the foregoing reasons, the court denies Plaintiff's motion for judgment on the agency record and sustains Commerce's Final Determination.  Accordingly, the court will enter judgment in favor of Defendant.

                                                                                        /s/ Leo M. Gordon
                                                                                        Judge Leo M. Gordon

Dated: January 8, 2026
       New York, New York