UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, JUDGE

| | |
|---|---|
| SOC TRANG SEAFOOD JOINT STOCK COMPANY (STAPIMEX) ) ) <br> Plaintiff, ) ) ) <br> .v. ) ) <br> UNITED STATES, ) <br> Defendant, ) ) ) <br> And ) ) <br> AD HOC SHRIMP TRADE ACTION COMMITTEE ) ) <br> And ) ) <br> AMERICAN SHRIMP PROCESSORS ASSOCIATION ) ) <br> Defendant-Intervenors. ) ) | Court No. 25-00030 |

**PLAINTIFF'S COUNSEL'S RESPONSE TO THE COURT'S MEMORANDUM AND ORDER**

This Court issued a Memorandum and Order on January 23, 2026, ordering STAPIMEX's counsel, John J. Kenkel, to show cause why the Court should not issue sanctions pursuant to USCIT Rule 11.

**I.    INTRODUCTION**

The Court discusses three concerns regarding this litigation. First, the Court cites STAPIMEX's Motion submitted to the Court requesting leave to correct a statement in its Reply Brief. *See* ECF No. 50.    Second, regarding that Motion, the Court believes counsel citation to *Pioneer Inv. Serv. Co. v Brunswick Assocs. Ltd P'ship*, 507 U.S. 380 (1993) is misplaced.  Third, the Court cites an issue with counsel's reference in his opening brief to

1

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc*. 467, U.S. 837, 842 (1984). The Court's issue is that decision was overturned in *Loper Bright Enters. V. Raimondo,* 603 U.S. ____ 144 S. Ct. 2244 (2024). Each of these issues is discussed, below.

## II. COUNSEL'S MOTION FOR LEAVE TO CORRECT REPLY BRIEF.

The Court states in its Memorandum that counsel for STAPIMEX should have moved the Court to seek supplementation of the record for the submission that had been rejected by Commerce in the underlying countervailing duty investigation. As counsel explained at oral argument, he had realized only a few days prior to the date of oral argument that he had mischaracterized the source of a certain document submitted to Commerce. Therefore, he immediately filed the motion in question. He had wanted the Court to rule on his motion for leave to correct his reply brief and, if granted, then file a motion to supplement the record to include that document that had been rejected by Commerce.

As part of its Memorandum and Order, the Court cites two rules of the District of Columbia. Bar: RPC 1.1, entitled "Competence," and RPC 3.3 entitled "Candor to Tribunal." As preliminary matter, the D.C. Bar has issued 290 rulings regarding professional conduct of its members, as contained on is website. None of these decisions has addressed RPC 1.1 or RPC 3.3. Thus, there is no guidance available demonstrating exactly what these rules require.

Counsel believes he has met the standard of both Rules. By submitting a motion for leave to correct his reply brief, counsel clearly met the burden imposed by RPC 3.3 since he did <u>not</u> "fail to correct a false statement of material fact or law previously made to the tribunal." Concomitantly, by filing this Motion to correct his reply brief, counsel met his burden under CIT Rule 11(b), trying to correct a mistake in his reply brief, which he believes

constitutes harmless error.

Regarding whether counsel could "address the rejection" of the document in question in the underlying investigation, it was submitted by counsel the day before the deadline for case briefs  Commerce did not reject this document until  the day after the case brief was filed.  Commerce does not allow any further arguments after the case brief/rebuttal brief stage.  Thus, counsel could not have argued this matter with the Department.

Regarding the submission of his opening brief at court, counsel simply did not remember that he had filed that document in the underlying investigation.  It was not until preparation for oral argument that counsel saw his misstatement in his reply brief and attempted to correct it via a motion.

### III.     COUNSEL'S RELIANCE ON CIT RULES 61 AND 24(a), AS WELL AS *PIONEER* AND OTHER CASES WERE RELEVANT EVEN IF NOT EXACTLY ON POINT.

Counsel believes he appropriately cited CIT Rules 61 and 24 in his motion.  Rule 61 discusses " error" and clearly treats it as "harmless error."

> Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party -- is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. <u>At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.</u>

(Emphasis added).  CIT Rule 24, while directly discussing intervention, appears to counsel to define "harmless" error.   It treats "mistake" as one of four types of "good cause" (together with "excusable neglect," "inadvertence," and "surprise").  *See* CIT Rule 24(a((3)(i).   All of these are types of mistakes but are treated by the Court as harmless error.  Thus, the Court will accept a late-filed motion for intervention for any of these reasons.  In essence, each of them is tantamount to "harmless" error.  Counsel finds no other examples of harmless error in the

3

CIT Rules other than in Rule 24.  Therefore, while "intervention" is not on point to the discussion at hand, Rules 61 and 24 make it abundantly clear that any type of error that is harmless will be ignored by the Court and the case allowed to proceed.  Thus, counsel, in the motion in question, was simply citing examples in the Court's Rules to support his claim that correcting his reply brief (and later, if that motion were accepted, filing another motion to allow into the record the document rejected by Commerce) was appropriate for the Court to rule on affirmatively.

    Accordingly, counsel did not violate CIT Rule 11 vis-à-vis citation to Rules 61 and 24.

    Counsel also cited two legal sources, *Pioneer*, and the Federal Rules on Bankruptcy Procedure regarding "excusable neglect."  The Court believes these citations are "misplaced."  The Court, in its Memorandum, states that "excusable neglect" is limited to situations where it is "used in a statute or a rule."  This language <u>is</u> used in CIT Rule 24.   It is also contained in the Rules of Federal Civil Procedure 6(b), which is the basis for the bankruptcy civil procedure rules cited in *Pioneer*.

    In both *Pioneer* and the Bankruptcy Rules, "excusable neglect" is at issue.  Both sources cite with approval the acceptance of "excusable neglect."  This term, in the opinion of counsel, is a synonym for "harmless error, mistake, inadvertence, surprise" and "excusable neglect" as stated in the Court's Rules.

    This Court also states that counsel "provided no guidance as to how the court could evaluate any 'inadvertence' or 'mistake' to see if Plaintiff's motion warranted relief."   The guidance requested is found in *Pioneer*.  Specifically, the *Pioneer* court stated as follows.

> The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or, closer to the point for our purposes, "to leave undone or

4

> unattended to *esp[ecially] through carelessness*." Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness. Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry "their ordinary, contemporary, common meaning." *Perrin v. United States, 444 U.S. 37, 42, 62 L. Ed. 2d 199, 100 S. Ct. 311 (1979)*. Hence, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," *Rule 9006(b)(1)*, Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Pioneer* at 388. Moreover, the Supreme Court's opinion noted that the Federal Bankruptcy Rules are patterned after the Federal Rules of Civil Procedure.

> Our view that the phrase "excusable neglect" found in <u>Bankruptcy Rule 9006(b)(1)</u> is not limited as petitioner would have it is also strongly supported by the Federal Rules of Civil Procedure, which use that phrase in several places. Indeed, *Rule 9006(b)(1)* was patterned after *Rule 6(b)* of those Rules. Under *Rule 6(b)*, where the specified period for the performance of an act has elapsed, a district court may enlarge the period and permit the tardy act where the omission is the "result of excusable neglect." As with *Rule 9006(b)(1)*, there is no indication that anything other than the commonly accepted meaning of the phrase was intended by its drafters. It is not surprising, then, that in applying *Rule 6(b)*, the Courts of Appeals have generally recognized that "excusable neglect" may extend to inadvertent delays. Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" under *Rule 6(b)* is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.

*Pioneer* at 391-392. (footnotes omitted). Thus, while *Pioneer* specifically concerns bankruptcy, the court's opinion is equally valid for other cases subject to the Federal Rules of Civil Procedure.

This Court's Memorandum cites *Nelson v. Nicholson* for the proposition that it overturned *Pioneer*. *See Nelson v. Nicholson* 489 F.3d 1380, 1385. That case concerned the

5

claim by a veteran decided by the U.S. Court of Appeals for Veterans Claims and then the U.S. Court of Appeals for the Federal Circuit ("CAFC"). There, the Federal Circuit held that it was limited in its decision making to applying (1) 38 U.S.C. § 7266(a), and (2) Veteran's Court's Rules of Practice. The Federal Circuit held that neither that statute nor the Court's rules "explicitly provide that excusable neglect may serve to remedy a late filing…" *See Nelson* at 1383.

In the instant case, this Court has not one but two bases to apply *Pioneer*. First, the *Pioneer* court acknowledged that Federal Rules of Bankruptcy Procedure Rule 9006(b)(1) is predicated on the Federal Rules of Civil Procedure Rule 6(b). Second, The CIT's own Rule 24 specifically cites, as noted, *supra*, several types of error which can be remedied by the court. Thus, the limiting language in *Nelson* is inapposite to the case at bar.

## IV.     RELIANCE ON *CHEVRON*.

The Court is correct that counsel erroneously relied on *Chevron* in his opening brief. That case dates back to 1984 and has been the cornerstone of antidumping and countervailing duty law for decades. Counsel admits he did not Shephardize *Chevron*. Counsel believes however, that it is unreasonable to impose sanctions on an attorney for failure to Shephardize a case. Counsel believes this also constitutes harmless error. Counsel only learned of the new case, *Loper*, in preparing for oral argument.

## V.     CONCLUSION

Counsel for STAPIMEX respectfully believes that he did not make any material or factual errors in his motion to correct. While there was a factual error in his reply brief, he attempted to correct it as soon as he was aware of it via his motion to correct.

Moreover, his reliance on CIT Rules 61 and 24 run in parallel to the Supreme Court's

6

decision in *Pioneer*. Further, as demonstrated, *supra*, *Nelson* does not distinguish *Pioneer* from the case at bar.

Finally, counsel admits that he did not Shephardize *Chevron*. However, this failure does not rise to an act so egregious as to warrant imposition of sanctions pursuant to Rule 11(b).

Pursuant to the Court's Memorandum, this Response is no more than seven pages.

Respectfully submitted,

  /s/ John J. Kenkel
John J. Kenkel
International Trade Law Counselors, PLLC
8647 Richmond Highway, Suite 623
Tel. (202) 390-4064
IntlTradeLawCounselors@outlook.com
*Counsel for Plaintiff*
*Soc Trang Seafood Joint Stock Company (STAPIMEX)*

Dated: February 4, 2026